GARRISON, Judge.
Plaintiff, Leonard Ledoux as curator of his mother, Ludovine Ledoux, brought a medical malpractice suit against defendants, F. Edward Hebert Hospital and Dr. N. Chandrasekaran. A jury trial commenced, and at the conclusion of plaintiff’s case, defendants motioned for a directed verdict. This motion was granted as to the doctor and denied as to the hospital. The jury concluded that the hospital was not guilty of fault which was the cause in fact *13 of the plaintiffs injury. Plaintiff has now brought this appeal alleging that the trial court erred in granting the doctor’s motion for directed verdict and that the jury committed manifest error in finding that the defendant hospital was not negligent.
In late July of 1984, Mrs. Ledoux suffered a- cardiovascular hemorrhage (stroke). She was taken to River Parish Hospital, an acute care facility. While at River Parish Hospital, a craniotomy and tracheostomy were performed, the plaintiff remaining in the intensive care unit for several days. She was totally bedridden and could not communicate with others.
Upon stabilization of plaintiffs condition, she was moved at her treating physician’s recommendation to F. Edward Hebert Hospital, a skilled nursing facility, for rehabilitation. While at the hospital, the plaintiff developed a large decubitus (bedsore). Plaintiff was then transferred to East Jefferson Hospital in order to rehabilitate her to a condition whereby she would be strong enough to undergo corrective plastic surgery for the bedsore.
Mrs. Ledoux, through her son, now claims that F. Edward Hebert Hospital failed to timely discover and treat the bedsore, treated her negligently, and that Dr. Chandrasekaran failed to properly supervise the hospital staff to ensure the correct treatment of the plaintiff. It sets forth the burden of proof in medical malpractice suits.
LSA-R.S. 9:2794 sets forth the burden of proof the plaintiff must meet in a medical malpractice suit against a physician.
LSA-R.S. 9:2794 states in pertinent part as follows:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
1.The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
2. That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
3. That as a proximate result of their lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
The plaintiff contends that the jury was manifestly erroneous in finding F. Edward Hebert Hospital not guilty of fault which was the cause in fact of the plaintiff’s injury.
The plaintiff in a medical malpractice suit against a hospital has the burden of showing that hospital personnel negligently departed from the recognized standard of care afforded by the hospitals in the area for the particular malady involved. It is also the plaintiff’s burden to establish the measure of care skill and diligence each hospital employee, such as nurses, owed the patient. Matranga v. Sara Mayo Hospital, 463 So.2d 632 (La. 4th Cir.1984).
Dr. Rothschild, the plaintiff’s expert medical witness, stated that it was his opinion that the appropriate standard of care with respect to a hospital requires that the hospital personnel discover the existence of a stage 1 or initial stage bedsore and, advise the treating physician in order to receive the appropriate orders. The hospital records indicate that Dr. Chandrasekaran ordered Tegaderm, a treatment commonly used for bedsores, on the 5th of September, approximately a week after being admitted to F. Edward Hebert. Two days later the records indicate that the treatment was changed to “wet/dry dressing”, also a common treatment for bedsores.
*14 Dr. Rothschild had testified earlier that there were any number of ways to treat a bedsore and that wet/dry dressings were among them. Testimony of Dr. Brobson Lutz who examined Mrs. Ledoux’s records stated that the records indicated to him that the nursing staff noticed a bedsore on the 5th, contacted the doctor who verbally ordered Tagaderm on the 5th. He further states that the order on the 7th for wet/dry dressings usually indicates that the area was noticed to be red and suffering from actual breakdown. He testified that the nursing notes indicate that the plaintiff was turned every two hours from admission. Plaintiffs emergency room physician at River Parishes Hospital, Dr. Arcuri, stated that Mrs Ledoux was a prime candidate for a bedsore even with the best of nursing care. This opinion was strengthened by Dr. Lutz’s testimony that the plaintiff possessed every high risk factor for bedsores. He stated that she had received acceptable treatment for her bedsore.
We may not disturb the lower court’s ruling in this case unless we find it to be manifestly erroneous. Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985). Based upon the testimony presented at trial, we believe there was a solid basis for the jury’s finding. Therefore, we affirm the trial court’s ruling finding the defendant, F. Edward Hebert Hospital free of fault.
Plaintiff’s second assignment of error is that the trial court erred in granting the directed verdict in favor of Dr. Chandrasek-aren. We believe the trial court was correct in its ruling for the following reasons.
Under Louisiana law, physicians are not negligent if they exercise that degree of skill and care which is usually possessed and exercised by those in the same field of the profession within the community. Hemingway v. Ochsner Clinic, 608 F.2d 1040 (C.A.1979) (A)(2). A plaintiff who brings a medical malpractice suit against a doctor must prove that the doctor either lacked the degree of knowledge or skill ordinarily practiced by other doctors in the same field of medicine, or that the doctor failed to use reasonable care and diligence, along with his best judgment, in applying his particular skills. Paul v. St. Paul Fire and Marine Ins., Co., 430 So.2d 285 (La.App. 3rd Cir.1983); LSA-R.S. 9:2794.
At no time did any of the testifying doctors state that Dr. Chandrasekaran either lacked the degree of knowledge or skill employed by other physicians or that he failed to use reasonable care in treating the plaintiff. As previously stated by Dr. Rothschild, the acceptable treatment for a bedsore was good nutrition, turning the patient, and cleanliness. The nursing notes confirm that the patient was turned every two hours from admission.
The plaintiff claims that the directed verdict was inappropriate because the plaintiff’s family testified that they rarely saw the doctor. However, this is not sufficient to carry the plaintiff’s burden of proof as set out in L.S.A.-R.S. 9:2794. Plaintiff’s expert witness stated that the doctor does not have to see the patient on a daily basis as treatment of bedsores is limited once the diagnosis has been established. Furthermore, the only statement made on the adequacy of Dr. Chandrasekaran’s performance was made by Dr. Lutz who deemed it acceptable.
For the reasons above this court does not find error in the trial court’s judgment granting directed verdict in favor of the defendant physician.
AFFIRMED.