587 So.2d 742 (1991)
Joan B. AUSTIN
v.
ST. CHARLES GENERAL HOSPITAL and Richard Ryba.
No. 90-CA-1315.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 1991.
Writ Denied December 13, 1991.
*744 Ramirez & Miskewicz, Patricia D. Miskewicz, Clyde A. Ramirez, Sterling E. Price, New Orleans, for plaintiff.
Carruth, Cooper and Adams, S. Alfred Adams, Baton Rouge, for Douglas D. Green Com'r of Ins. and the Louisiana Patient's Compensation Fund.
Windhorst, Gaudry, Talley & Ranson, Daryl A. Higgins, Michael L. Martin, Gretna, for defendant-appellant N.M.E. Hospitals, Inc. d/b/a St. Charles General Hosp.
Before SCHOTT, C.J., and BYRNES and WARD, JJ.
BYRNES, Judge.
St. Charles General Hospital (St. Charles General) appeals a jury award in favor of Joan Austin for personal injuries sustained while receiving treatment in the hospital. We affirm.
On August 28, 1984, Joan Austin was admitted to St. Charles General for diagnostic testing for suspected diabetes, ulcers, hypertension and thyroid problems. On August 30, 1984, Ms. Austin was brought in a wheelchair from her room to a waiting area in the nuclear medicine department outside of the thyroid scan room where she was to be tested. Richard Ryba, the nuclear medicine technician who was to perform the scan, wheeled Ms. Austin into the room, where Wanda Gettridge, a nuclear medicine technician, was present. After Ms. Gettridge left, Ms. Austin got on the table and Mr. Ryba performed the thyroid scan. Trial testimony provides conflicting evidence as to whether the x-ray table tipped and Ms. Austin fell or she slid to her knees as she attempted to return to the wheelchair. Ms. Gettridge returned to the thyroid scan room when Ms. Austin was in the process of rising from her knees and getting into her chair. Ms. Austin stated that she rolled her wheelchair to the elevator and back to her room although Mr. Ryba testified that he rolled Ms. Austin to the waiting room area. A hospital courier, Betty Cangelosi, related that she wheeled Ms. Austin back to her room.
Ms. Austin brought a medical malpractice action against St. Charles General for injuries sustained as the result of the fall sustained when she was being transferred from an x-ray table to a wheelchair. As a prerequisite to filing the lawsuit, pursuant to LSA-R.S. 40:1299.41 et seq., a medical review panel rendered an opinion on December 19, 1985, stating that there was a material issue of fact, not requiring expert opinions bearing on liability for consideration by the court. On January 15, 1986, plaintiff filed suit against St. Charles General's employee Richard Ryba, alleging negligence in the care and treatment of the plaintiff. On October 4, 1989, the day of trial, the trial court ruled that the plaintiff could proceed under a theory of ordinary negligence. After the plaintiff rested, the court dismissed Richard Ryba from the proceedings because he was never served with the lawsuit. Thereafter, the hospital remained as the defendant. The jury found that St. Charles General employees were guilty of negligence that was the proximate cause of injuries or aggravation of injuries to the plaintiff. The jury awarded Joan Austin $125,000 reduced by 25 percent for the plaintiff's comparative fault.
Upon this court's grant of writ application and order, the trial court granted the motion of Douglas O. Green, Commissioner of Insurance for the State of Louisiana, the Office of the Attorney General, and the Louisiana Patient's Compensation Fund to intervene and file a suspensive appeal on the issue of quantum for the purpose of appealing the excess judgment against the fund.
On appeal, the defendants contend that: (1) the trial court erred in allowing the plaintiff to abandon her cause of action based on medical malpractice and to proceed under a theory of ordinary negligence; (2) the jury erred in finding defendant negligent as well as finding a causal connection between defendant's conduct and plaintiff's injury; (3) plaintiff's action had prescribed; and (4) the jury abused its discretion by awarding $125,000 for plaintiff's injuries.
*745 St. Charles General argues that plaintiff's petition asserted a medical malpractice action, requiring plaintiff to establish the appropriate standard of care and any violation by expert testimony.
Louisiana jurisprudence provides differing guidelines for the standard of care for hospitals. In Keyworth v. Southern Baptist Hospitals, Inc., 524 So.2d 56, 57-58 (La.App. 4 Cir.1988), writ denied, 525 So.2d 1058 and writ denied, 525 So.2d 1061 (La.1988), this court reviewed the standard of care applicable to hospitals. The Court noted the Supreme Court's ruling in Hunt v. Bogalusa Community Medical Center, 303 So.2d 745, 747 (La.1974), specifying that:
A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached the duty of care it owes to a particular patient depends upon the circumstances and the facts of that case.
In Keyworth, supra, 524 So.2d at 58, this court stated:
One year after Hunt (1975) several provisions were enacted relative to a comprehensive medical malpractice scheme, including La.R.S. 40:1299.41 which provides for definitions and general applications. Paragraph 1 defines "health care provider":
(A) person, corporation, facility or institution licensed by this state to provide health care or professional services as a physician, hospital, ....
Paragraph 7 defines "tort" and the standard of care applicable to "health care providers":
The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill. (emphasis added).
R.S. 40:1299, intended to answer the question left open in Hunt, applies the "locality rule" to health care providers in cases involving negligence, but expressly exempted hospitals.

However, prior to trial herein the district court granted a motion which ordered "any testimony regarding the standard of care required of the Southern Baptist Hospital and its nursing staff will be prohibited unless such testimony is offered by a person qualified to testify regarding local standards of care in hospitals." This court found no error in that ruling and denied the writ. Keyworth v. Southern Baptist Hospitals, Inc., No. C-5524 (La.App. 4th Cir. April 29, 1986).
The Supreme Court summarily granted certiorari and stated: "Locality rule does not apply to hospitals." Keyworth v. Southern Baptist Hospitals, Inc., 491 So.2d 15 (La. July 1, 1986).
A few months later, Hastings v. Baton Rouge General Hospital, 498 So.2d 713 (La.1986) restated Hunt's holding that a hospital is bound to exercise the degree of care toward a patient that his or her condition requires and that this must be determined under the particular facts and circumstances of each case. But cf. Coleman v. Touro Infirmary, 506 So.2d 571 (La.App. 4th Cir.1987), writs denied 507 So.2d 1247, 1248 (La.1987).
Thus, the duty of care owed by a hospital is not governed by the locality rule. [Emphasis added.]
See also Smith v. State Through Dept. of Health and Human Resources Admin., 523 So.2d 815 (La.1988); and Shackleford v. State Through Dept. of Health and Human Resources, 534 So.2d 38 (La.App. 3rd Cir.1988), writ denied, 536 So.2d 1218 (La.1989). However, this court has also held that the measure of adequate and acceptable medical care owed a patient by *746 each hospital employee is that established by other institutions throughout the area in Coleman v. Touro Infirmary of New Orleans, 506 So.2d 571, 575 (La.App. 4 Cir. 1987), writs denied 507 So.2d 1247, 1248 (La.1987); Ledoux v. Chandrasekaran, 551 So.2d 12 (La.App. 4 Cir.1989). This court noted that: "To establish malpractice, a plaintiff must prove by a preponderance of the evidence that one or more hospital employees performed in a substandard way so as to violate this customarily accepted standard of hospital care." Coleman, supra, 506 So.2d at 575-576. Nevertheless, these cases do not specifically mandate that the plaintiff must prove a breach of duty by the use of expert testimony. We conclude that the standard of care a hospital owes its patients enunciated in Keyworth is the prevailing view.
In a medical malpractice action against a hospital, the plaintiff must prove, as in any negligence action, that the defendant owed the plaintiff a duty to protect against the risk involved, that the defendant breached that duty, that the plaintiff suffered an injury, and that the defendant's actions were a substantial cause in fact of the injury. Smith v. State Through Dept. of Health and Human Resources Admin., supra, 523 So.2d at 819. The hospital's duty has been traditionally limited: a hospital is not the insurer of a patient's safety, and the rules of care are limited by the rule that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen. Ray v. Ameri-Care Hospital, 400 So.2d 1127, 1138-1139 (La.App. 1 Cir.), writ denied 404 So.2d 277 (La.1981). The standard of care for hospitals in medical malpractice actions set forth in Hunt, supra, and Keyworth, supra, are applicable for hospitals in other causes of action based on negligence, e.g., wrongful death action: Palermo v. NME Hospitals, Inc.; 558 So.2d 1342 (La.App. 4 Cir.1990); as well as a tort action for damages for mental pain and anguish: LeJeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990).
St. Charles General asserts that the trial court erred in allowing the plaintiff to proceed under a theory of negligence. Any conduct complained of should be handled under procedures of the Louisiana Medical Malpractice Act if it can reasonably be said that it comes within the definitions of the act, even though there may be alternative theories of liability. Cashio v. Baton Rouge General Hospital, 378 So.2d 182 (La.App. 1 Cir.1979). The trial court in the present case charged the jury on negligence and the standard of care by which to judge the hospital's conduct, as follows:
Now, let us discuss the concept of negligence and contributory negligence and proximate cause. The plaintiff in this case, Joan Austin, claims that she suffered an aggravation of her previous physical condition, an aggravation and injury that she suffered because the defendant negligently handled her in the examination room. As we generally know in Louisiana we have what we call the common law in the other states. We have what we call a Civil Code and the article in the Civil Code that applies in this case discusses what responsibilities are and that article is Article 2315 which states, "Every act whatsoever a man that causes damage to another, obliges him by whose fault it happens, to repair it."
Therefore, by fault we mean negligence. And what is negligence? We define negligence as the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, when prompted by consideration which ordinarily regulate the conduct of human affairs. It is, in other words, the failure to use ordinary care under the circumstances.
In this case I charge you it is up to you to determine whether or not the employees of St. Charles General Hospital used ordinary care. The employees of St. Charles General Hospital's duty toward the patient is (sic) that a hospital is not an insurer of a patient's safety and the rules of care are limited by the rule that *747 no one is required to guard against or take measures to avert that which a reasonable person under these circumstances would not anticipate as likely to happen. A hospital such as St. Charles General Hospital is only required to exercise a degree of care reasonably expected in view of the known condition of that particular patient. In other words, if you find that the employees of St. Charles General Hospital used ordinary care under the circumstances, then I charge you that they are not negligent.
On the other side of the coin, if you feel under the circumstances that the employees of St. Charles General Hospital did not use ordinary care, did not use the care that a reasonable prudent person would do, prompted by the consideration of all of the circumstances surrounding it, then if you feel they did not use ordinary care, then I charge you that they are guilty of negligence.
By ordinary care we mean that care which reasonably prudent persons exercise in the management of their own affairs in order to avoid injury to themselves or their property or other persons or property of others. Ordinary care is not an absolute term but a relative one. That is to say in deciding whether care was exercised in a given case, the conduct in question must be viewed in light of all the surrounding circumstances as shown by the evidence in the case.
The jury instructions fairly and reasonably point up the issues presented by the pleadings and the evidence and provide the correct principles of law for the jury's application to the facts. The instructions did not deprive the plaintiff of a meaningful jury trial. Failure of the trial court to include the specific verbiage of the standard of care applicable to hospitals enunciated in Hunt, supra, and Keyworth, supra, does not constitute reversible error.
St. Charles General further contends that the jury erred in finding: (a) that the defendant was negligent; and (b) a causal connection between the accident and the defendant's injuries. Both parties provided contradictory evidence as to whether the hospital employees were negligent. Ms. Austin related that she asked Richard Ryba for a stool when he told her to get on the x-ray table. She testified that the wheels on the table were not locked and the table moved, rocked and threw her to her knees. She asked for Ryba's help but Ryba failed to assist her and she had to crawl back to the wheelchair which was several feet from the table. She asserted that she went over again when she reached for the wheelchair because the wheels were unlocked. Ms. Austin related that she felt pain immediately. Richard Ryba testified that the plaintiff refused assistance and slowly slid to her knees when she got off the x-ray table and got back into her wheelchair positioned next to the table. He related that the wheels on the table and wheelchair were locked and stationary.
Linda Ivory, a nursing supervisor at St. Charles General, testified on behalf of the defendant. She affirmed that the patient's history included prior back surgeries, but did not reflect any restrictions or need for assistance. The nurse's notes included the notation on August 30, 1984, that the patient "stated, `I fell to my knees down there', and complained of back pain for which she was given medication." Mr. Ryba testified that he was unaware that the patient complained until he received a call from a nurse asking what had happened. The incident report designated the "nature of alleged injury" as "slid to knees." The incident description stated, "patient slowly slid to her knees as she was getting from the scanning table to wheelchair." "She assisted herself into the wheelchair with no apparent problems." The report was signed by Richard Ryba on August 30, 1984.
Absent manifest error, the appellate court should not disturb the finding of the jury which has evidence before it furnishing a reasonable factual basis for its verdict, based upon its reasonable evaluation of credibility. Ray, supra, 400 So.2d at 1140. Evidence was presented at trial upon which the jury could conclude that under the circumstances the hospital was negligent in failing to assist the patient and *748 failing to lock the wheels on the scanning table and wheelchair.
The defendant also argues that the plaintiff failed to prove that the hospital's negligence caused plaintiff's injuries. In Maxwell v. Soileau, 561 So.2d 1378, 1387 (La. App. 2 Cir.1990) writ denied 567 So.2d 1123, 1124 (La.1990), the appellate court stated:
In a medical malpractice action, the plaintiff must show that as a result of the defendant's negligence he suffered injuries that would not otherwise have occurred. Plaintiff need not show that defendant's conduct was the only cause of the harm nor must he negate all other possibilities. Rather, he must show by a preponderance of the evidence, or more probably than not, that he suffered the injury because of defendant's conduct. Where different medical procedures or different health care providers may have concurred to create or worsen the harm, a tortfeasor is responsible not only for the injuries directly resulting from his substandard conduct but for subsequent treatment by health care providers who seek to resolve the original harm. This is so whether or not the subsequent treatment is rendered negligently. However, if the subsequent treatment is deemed negligent, then the original physician and the subsequent ones are solidarily liable for the total harm. Thus, the risk of further injury from treatment of health care providers whose services are made necessary by the original negligent act is within the scope of the risk foreseeable by the original tortfeasor. Weber v. Charity Hospital of Louisiana, 475 So.2d 1047 (La.1985), and Howell v. Iacona, 505 So.2d 821 (La.App. 2d Cir.1987).
Causation is a question of fact. Smith v. State Through Dept. of Health Human Resources Admin., supra, 523 So.2d at 822. The test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved through medical testimony that it was more probable than not that subsequent injuries were caused by trauma suffered in the accident. Williamson v. St. Francis Medical Center, Inc., 559 So.2d 929 (La.App. 2 Cir.1990).
Joan Austin's history of severe back pain originated from an automobile accident which occurred in March, 1980. She underwent several back operations, including a laminectomy in 1980 and 1981, as well as two surgeries performed by Dr. Henry LaRocca consisting of a disc excision and fusion on March 6, 1983 and anterior lumbar fusion on March 22, 1984.
Dr. Charles Mary admitted Ms. Austin to St. Charles General originally for testing and discharged her on September 1, 1984. On that date Dr. Salvador Henry LaRocca, an orthopedic surgeon, readmitted Ms. Austin for recurring back pains and for surgery repair of a hernia. The hernia operation was performed on September 18 and Ms. Austin was discharged or September 23, 1984. She last saw Dr. LaRocca on October 15, 1984. Thereafter, in May, 1985, Ms. Austin was treated at the Tulane University Medical Center emergency room after she slipped and fell on the sidewalk.
Dr. Victor Reed Wakefield and Dr. R. Michael Thompson, chiropractors from Alabama, began treating Ms. Austin in April, 1985. They found a compression fracture in Ms. Austin's spine. They believed that there was a reasonable level of probability that the trauma from the fall could have caused the compression.
Ms. Austin testified that physicians would not treat her, but would refer her back to Dr. LaRocca who suggested that she undergo additional surgery which she did not want.
Dr. John Olson, a neurologist, testified on behalf of the plaintiff. He initially examined Ms. Austin on August 3, 1989, diagnosing a compression fracture at L2 which he related to her August 30, 1984 fall. He noted that with the preexisting back condition and because the plaintiff's pain was significantly worse, he opined that the trauma of the fall exacerbated her condition.
At trial Dr. LaRocca reviewed the plaintiff's x-rays, testifying that the x-rays taken on March 29, 1985 did not reveal the *749 presence of a compression fracture but that the x-ray taken on May 7, 1985 showed a compression fracture. He concluded that the fracture happened when the plaintiff fell later in May, 1985. Dr. Charles Aprill, a radiologist, also reviewed the x-rays and opined that the compression fracture occurred between March 29 and May 7, 1985.
In medical malpractice actions, a viewing court will give great deference to a jury's findings when medical experts express different views, judgments and opinions. Maxwell, supra, 561 So.2d at 1387. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Evidence was presented upon which the jury could conclude that there was a causal connection between her fall on August 30, 1984 and her subsequent injuries.
Defendant also claims that plaintiff's action has prescribed under a theory of ordinary negligence because it was brought more than one year after the date of the occurrence. LSA-C.C. Art. 3492. As reviewed previously, plaintiff's action is within the definitions of the Louisiana Medical Malpractice Act. Cashio, supra; Pitre v. Hosp. Serv. Dist. No. 1 of Parish of Terrebonne, 532 So.2d 501 (La.App. 1 Cir.1988). Because expert testimony or proof of a community standard is unnecessary, any error in proceeding under a theory of ordinary negligence was harmless. The period of prescription recommences for purposes of the Medical Malpractice Act upon plaintiff's receipt of the Medical Review Panel's Opinion. LSA-R.S. 40:1299. 47(A); Kaltenbacher v. Jefferson Parish Service District No. 2, 424 So.2d 434 (La. App. 5 Cir.1982). Plaintiff's suit was timely filed as a medical malpractice action. LSA-R.S. 9:5628.
St. Charles General and intervenors, the Commissioner of Insurance and the Louisiana's Patient's Compensation Fund, urge that the jury erred in awarding $125,000 in damages which were not itemized. An appellate court cannot disturb a damage award unless the record clearly reveals that the trier of fact abused its discretion in making the award. LSA-C.C. Art. 2324.1; Reck v. Stevens, 373 So.2d 498 (La.1979). The reviewing court must evaluate the particular injuries and their effects upon the particular injured person. It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases is proper. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Ms. Austin, a forty-seven year old female at the time of trial, was overweight and had a history of back problems. Dr. Olson testified that the plaintiff would be more likely than the average person to have significant complications from a fall. He indicated that a trauma superimposed over a fusion would aggravate her condition and pain. Dr. Olson noted a marked difference in the severity of the plaintiff's symptoms after her August 30, 1984 accident, and related her compression fracture at L2 to that accident. Dr. LaRocca agreed that the plaintiff's accident was a contributory factor to the deterioration of her back. On October 15, 1984, he suggested that Ms. Austin undergo further surgery to place a spinal rod in her back; however, Ms. Austin was reluctant to have additional surgery. After a review of the evidence, we find no abuse of the jury's general damage award of $125,000 with an allocation of 25 percent due to plaintiff's fault.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
SCHOTT, Chief Judge, dissenting:
I respectfully submit that the award constitutes an abuse of the jury's discretion. The plaintiff was entitled to a substantial amount for aggravation of a very bad back condition, but not $125,000.
The only support for the award would be the compression fracture at L-2, but plaintiff failed to prove her fall in July, 1984 caused this injury.
Dr. Larocca had been treating the plaintiff for back problems since 1980. He operated on her a number of times and performed a spinal fusion on her. He saw her shortly before and shortly after her fall *750 and she was under his active treatment throughout this period of time. Larocca viewed x-ray films in March, 1985 and was satisfied there was no compression fracture at L-2. This opinion was shared by radiologists who viewed the film. In May, 1985 after plaintiff had another fall Larocca found the first indication of a compression fracture. He testified that such an injury cannot develop over a period of time, but occurs simultaneously with a trauma.
Dr. Olsen did not see plaintiff until five years after her accident. He acknowledged that there was no x-ray evidence of a compression fracture until long after the accident sued on, but he stated that all these physicians including himself must have missed it because it must have been there. He bases this assumption on plaintiff's statement to him of her history.
No one can dispute that plaintiff's suffering was aggravated by her August, 1984 fall or that she is entitled to compensation for this additional suffering. But no evidence supports Dr. Olsen's opinion that the fall caused the compression fracture. Plaintiff had the burden of proving causation and failed to carry it. Without proof of such causation for the fracture the award was excessive and should be reduced to the highest point within the jury's discretion for aggravation of a previous back condition.