659 So.2d 544 (1995)
Lisa Huffaker, wife of/and Jim HUFFAKER
v.
ABC INSURANCE COMPANY, Tulane University Medical Center, XYZ Insurance Company, Implant Technology, Inc., and Osteoimplant Technology, Inc.
No. 94-CA-2345.
Court of Appeal of Louisiana, Fourth Circuit.
July 26, 1995.
R. Brent Cueria and Frank J. D'Amico, Jr., New Orleans, for plaintiffs/appellants.
Stewart E. Niles, Jr., Amy M. Winters, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant/appellee Administrators of the Tulane Educational Fund d/b/a Tulane University Medical Center.
Before BARRY, BYRNES and LANDRIEU, JJ.
LANDRIEU, Judge.
Arguing that their claim is solely one for products liability and therefore not subject to the provisions of the Medical Malpractice Act, plaintiffs appeal the contrary judgment of the trial court.
On June 7, 1990, Lisa Huffaker underwent hip replacement surgery at Tulane University Medical Center. During the procedure, an artificial hip prosthesis was implanted in her body. On June 7, 1993, Lisa Huffaker underwent emergency surgery to replace the hip prosthesis which allegedly "improperly wore" inside plaintiff's body necessitating replacement. On April 28, 1994, she and her husband filed suit against Tulane University Medical Center as designer and/or manufacturer of the prosthesis.
Plaintiffs' complaint alleged that Tulane was liable for their own negligence under Louisiana Civil Code Article 2315 and strictly liable for things under their care, custody and control, to wit, the artificial hip implant at issue under Louisiana Civil Code Article 2317. Specifically, their claims include: negligent design and manufacture; failure to warn; breach of express and implied warranty; and products liability.
The primary issue on appeal is whether plaintiffs' action against Tulane Medical Center constitutes an action based on medical malpractice under La.Rev.Stat.Ann. 40:1299, so as to require initial submission of the claim to a medical review panel. We agree with the trial court's judgment that the action falls within the purview of the Medical Malpractice Act and thus requires its submission to a medical review panel.
Plaintiffs assert that the decision in Branch v. Willis-Knighton Medical Center, 92-3086 (La. 4/28/94), 636 So.2d 211, supports *545 their argument that products liability claims do not fall within the Louisiana Medical Malpractice Act. In Willis-Knighton Medical Center, the Supreme Court addressed the issue of whether the special prescription rule applicable to medical malpractice actions, La. Rev.Stat.Ann. 9:5628, covered plaintiff's action seeking strict tort product recovery from Willis-Knighton Medical Center ("WKMC"). Plaintiff's claim was for damages sustained when he contracted hepatitis through contaminated blood sold by WKMC. The Court addressed the terms of the Act in 1976, the time of the transfusion. At the time of the transfusion La.Rev.Stat.Ann. 40:1299.41(8) read as follows:
`Malpractice' means any tort or breach of contract based on health care or professional services rendered, or which should have been rendered by a health care provider, to a patient.
The Court concluded that the language of the Act, including its definitions, evidenced a legislative intent to cover every kind of medical malpractice action but did not aim to affect suits outside this field. The court further noted that "arising out of patient care" is descriptive of an action for damages that results from a physician's failure to exercise the "standard of care" required of him in the treatment of a patient.
Conversely, strict products liability actions arise out of the sale of a product in a defective condition unreasonably dangerous to the user or consumer and the causation thereby of physical care to such person. Willis-Knighton, 636 So.2d at 215. The inapplicability of the prescriptive rule was based on the Court's determination that the rule did not contain "terms or concepts indispensable to the definition, classification and administration of strict tort products liability actions, such as `strict liability,' `defective condition,' `unreasonably dangerous,' `normal use,' or `user or consumer.' Id.
The definition for malpractice currently contained in La.Rev.Stat.Ann. 40:1299.41(A)(8), states:
Malpractice means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.

The above statute contains language which is indispensable to the definition, classification and administration of strict torts products liability. Also, use of the wording "defects in or failures of prosthetic devices" indicates clear legislative intent to include strict products liability. The Legislature has expressly defined malpractice to include a health care provider's strict liability for some injury-causing defective things, specifically enumerating defective blood, tissues, transplants, drugs, and medicine, as well as prosthetic devices used during the course of the patient's treatment.
Plaintiffs concede that if they had alleged that the actions of the surgeons or medical staff in handling or implanting the hip device had caused the implant to wear improperly the case would clearly fall within the Medical Malpractice Act. However, plaintiffs seek to distinguish their case by asserting that their suit is against Tulane solely in connection with its design and manufacture of the implant which caused the improper and premature wearing of the hip devise.
This argument was specifically addressed in Rogers v. Synthes, Ltd., 626 So.2d 775 (La.App. 2d Cir.1993), which involved a suit to recover damages sustained when a surgically implanted prosthesis broke. The Second Circuit concluded that plaintiff's suit for failure of a prosthetic device was expressly enumerated in the definition of malpractice. The court explained that characterizing a suit as one in products liability and redhibition, as opposed to medical malpractice does not mean that the suit falls outside of the scope of the Louisiana Medical Malpractice Act.
*546 Moreover, this Court has stated that "[a]ny conduct complained of should be handled under the procedures of the Louisiana Medical Malpractice Act if it can be reasonably said that it comes within the definitions of the Act, even though there may be alternative theories of liability." Austin v. St. Charles General Hospital, 587 So.2d 742, 746 (La.App. 4th Cir.1991), writ denied, 590 So.2d 80 (La.1991).
Finally, as noted by the trial court, plaintiff's reliance on Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992) is misplaced. In Sewell, the court drew a distinction between allegations based solely on strict liability for defective things under the defendant's custody and those based on the defendant's negligence as well as strict liability. The court held only that the former did not fall within the definition of malpractice.
Therefore, as plaintiffs have alleged that defendant both caused the defect and negligently failed to repair it, the allegations fall under the provisions of the Medical Malpractice Act. We express no opinion as to whether the claim against Tulane would be subject to the Medical Malpractice Act were it alleged that Tulane was solely the manufacturer of a defective prosthetic device that was sold to another health care provider for its use in the care of a patient.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.