William **RICHARDSON**, Betty P. Jones, Iris R. Robertson and Beverly Collier

v.

No. 94–1926.

United States District Court, E.D. Louisiana.

Sept. 21, 1994.

See also 865 F.Supp. 1210.

J. Wayne Mumphrey, George Narcisse Bischof, Jr., Law Office of J. Wayne Mumphrey, Chalmette, LA and Denise Marie D'Aunoy, Law Office of G. Michael Grosz, III, Gretna, LA, for William Richardson, Betty P. Jones, Iris R. Robertson and Beverly Collier, plaintiffs.

John Francis Olinde and Charles P. Blanchard, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, for defendant Advanced Cardiovascular Systems, Inc.

Charles A. Boggs, Boggs, Loehn & Rodrigue, New Orleans, LA, for defendant Nick Moustakas, M.D.

Judith Melonie Wilkinson, Adams & Reese, Deborah Cunningham Foshee, Kathy Manchester Borbas, and C. Peck Hayne, Jr., Gordon, Arata, McCollam & Duplantis, New Orleans, LA, for defendant Christian Health Ministry, Inc., doing business as Mercy & Baptist Medical Centers, formerly known as Mercy Hosp. of New Orleans, Inc.

### ORDER & REASONS

CHARLES SCHWARTZ, Jr., District Judge.

Before the Court is defendant Nick Moustakas, M.D.'s Motion to Dismiss, pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs filed formal opposition to said motion and both parties have filed supplemental motions to support their positions. The motion was set for oral hearing on September 14, 1994. However, the Court has determined that oral argument would not aid it in the disposition of this matter and deemed the motion submitted on the briefs.

For the reasons herein stated below, the Court GRANTS Nick Moustakas, M.D.'s Motion for Summary Judgment, dismissing plaintiffs' claims against him as premature.

The background and procedural mandates of the captioned matter have been recounted in this Court's September 15, 1994 Order and Reasons [1], attached hereto, and the Court incorporates same by reference.

In evaluating the pleadings in the captioned matter, the Court has considered exhibits attached to the pleadings in connection with this matter and therefore views the motion from defendant Dr. Moustakas as a Motion for Summary Judgment. The Court notes that contrary to the plaintiffs' allegations in their Court–Permitted Supplemental Memorandum Opposing Motion for Summary Judgment, defendant, Dr. Moustakas has not filed a motion for summary judgment and therefore is not technically required to submit a statement of uncontested facts. Instead, the Court, under the discretionary power afforded to it under Rule 56 of the Federal Rules of Civil Procedure, has independently deemed the defendant's motion as a motion for summary judgment.

Plaintiffs have produced no evidence to controvert defendants' proof that at all pertinent times to the captioned matter, Dr. Moustakas was considered to be a "health care provider" as envisioned by the Louisiana Medical Malpractice Act.[2] As the Court has previously noted, for claims against a health care provider, a presuit medical panel review is statutorily required.

All malpractice claims against health care providers covered by this Part … shall be reviewed by a medical review panel established as hereinafter provided for in this Section.[3]

No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.[4]

Malpractice is defined under the Act as:

any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered by a health care provider, to a patient, including failure to render services timely and the handling of a patient …[5] (emphasis added).

"Tort" in the above definition refers to:

any breach of duty or any negligent act *or omission* proximately causing injury or damage to another. The standard of care required of every health care provider … shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.[6]

Accordingly, Louisiana courts have consistently found on those occasions in which a plaintiff brings a claim covered by the Act in a court action before the claim has been presented to a medical review panel under the Act, the plaintiff's claim must be dismissed as premature.[7] Dismissal of claims is

1. *Via* Order & Reasons entered September 15, 1994, this Court granted defendant Mercy Hospital's Motion for Summary Judgment, dismissing plaintiff's claims as premature, since at all times pertinent to this matter, Mercy was and is a qualified health care provider within the meaning of Louisiana's Medical Malpractice Act and that plaintiffs' had failed to first present their claims to a medical review panel as required by the Act.

2. Exhibit A of Defendant's Motion to Dismiss (correspondence from State of Louisiana which lists Dr. Nick Moustakas as a health care provider enrolled in the Patients' Compensation Fund); *see also*, La.R.S. 40:1299.41A(1) (definition of health care provider under the Louisiana Medical Malpractice Act).

3. La.R.S. 40:1299.47A(1).

4. La.R.S. 40:1299.47B(1)(a)(i).

5. La.R.S. 40:1299.41A(8).

6. La.R.S. 40:1299.41A(7).

7. *See, e.g., Miller v. Griffin–Alexander Drilling Co.,* 685 F.Supp. 960, 967 (W.D.La.1988), *aff'd,* 873 F.2d 809, 814 (5th Cir.1989); *Everett v. Goldman,* 359 So.2d 1256, 1271 (La.1978). *See also, Renz v. Ochsner Foundation Hospital/Clinic,* 420 So.2d 1008, 1009–10 (La.App. 5th Cir.1982) (maintaining a hospital's exception of prematurity for a suit arising from injuries allegedly sustained as a result of the malfunction of a medical

required, rather than staying a decision pending the outcome of a medical review panel. *Roberts v. Russo,* 400 So.2d 354 (La. App. 4th Cir.1981).[8]

■ Plaintiffs attempt to escape the clear dictates of the Medical Malpractice Act by alleging claims of intentional tort. All of the specific allegations against Dr. Moustakas are precisely the type of claims envisioned by the Act for review by a panel of medical experts. As was the case with Mercy Hospital, insofar as plaintiffs' claims relate to Dr. Moustakas, this Court is of the opinion that plaintiffs' allegations of intentional tort are mere efforts to camouflage negligence claims which are not ripe for disposition by the Court at this time.[9]

■ Plaintiffs further complain that Dr. Moustakas and the defendant hospital, in contravention of medical protocol and the standard of care, created records after the fact to falsely indicate the standby status of Dr. Moustakas who had never, as required by the standard of care, obtained informed consent of the patient for his role.[10] This claim, like the plaintiffs' other claims, is one that alleges substandard care. Determinations of which medical procedures constitute the standard or a substandard care are to be evaluated by a medical review panel before the matter may be brought before a court. Therefore, the Court finds that this claim must also be dismissed as premature.

Plaintiffs final allegation is that due to the intentional infliction of emotional distress by Dr. Moustakas, plaintiffs have suffered severable damages as if they had come upon the scene of the event of [plaintiffs' mother's]

death soon thereafter. This specious allegation has been previously dismissed against the defendant hospital and for the same reasons set forth in the attached Order and Reasons, this identical claim as against defendant Dr. Moustakas is also without merit.

Accordingly, for all of the foregoing reasons,

**IT IS FURTHER ORDERED** that defendant, Nick Moustakas, M.D.'s Motion for Summary Judgment is hereby GRANTED and plaintiffs' claims against him are DISMISSED AS PREMATURE.

**IT IS FURTHER ORDERED** that plaintiffs' claim for the intentional infliction of emotional distress against defendant, Nick Moustakas, M.D. is DISMISSED with prejudice.

## Peggy GATES, Plaintiff,

### v.

**James Gordon WALKER, in his official capacity as Superintendent of Education of the Hattiesburg Municipal Separate School District, Johnny Dupree, in his official capacity as a member of the School Board of the Hattiesburg Municipal Separate School District, Dr. Jeff Bowman, in his official capacity as a member of the School Board of the Hat-**

---

life support system following coronary bypass surgery); *Cashio v. Baton Rouge General Hospital,* 378 So.2d 182, 184–85 (La.App. 1st Cir.1979) (maintaining a hospital's exception of prematurity in a suit for the death of a patient from an infection allegedly acquired from non-sanitary conditions during a coronary bypass operation); *Gobble v. Baton Rouge Hospital,* 415 So.2d 425, 426 (La.App. 1st Cir.1982) (maintaining the Medical Malpractice Act applies to all claims alleging malpractice, including claims for injuries resulting in death).

**8.** *See also, Hodge v. Lafayette General Hospital,* 399 So.2d 744 (La.App. 3rd Cir.1981) (sustaining exception of prematurity as to all defendants on

the grounds that patient had not obtained an opinion of the medical review panel prior to suit claiming lack of informed consent, which is unintentional negligence, not intentional tort).

**9.** The Court, in its above-referenced Order and Reasons which has been attached hereto, fully explained its reasoning for dismissing plaintiffs' intentional tort claims against the defendant hospital, a health care provider. The Court perceives no difference in those allegations and the claims made against Dr. Moustakas.

**10.** Plaintiffs' Petition for Wrongful Death, Paragraph XIV.

tiesburg Municipal Separate School District, Dr. Charlotte Tullos, in her official capacity as a member of the School Board of the Hattiesburg Municipal Separate School District, Kathryn Jones, in her official capacity as a member of the School Board of the Hattiesburg Municipal Separate School District, Dr. Ralph Noonkester, in his official capacity as a member of the School Board of the Hattiesburg Municipal Separate School District and Dr. Sam Spinks, individually, Defendants.

No. 2:90–cv–128WS.

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Sept. 12, 1994.

Jack Parsons and Rebecca C. Taylor, Wiggins, MS, for plaintiff.

J. Perry Sansing, Jackson, MS, and Moran M. Pope, III, Hattiesburg, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the defendants' motion for summary judgment filed under Rule

56(b),[1] Federal Rules of Civil Procedure. The plaintiff, Peggy Gates, a school teacher, brings this action pursuant to 42 U.S.C. §§ 1983[2] and 1988[3] alleging that the defendants have violated her constitutional right of free speech guaranteed under the First Amendment[4] to the United States Constitution by not renewing her teaching contract on account of her active and outspoken criticisms of her superintendent and school board. Defendants, the Superintendent and the Board of Trustees of the City of Hattiesburg Municipal Separate School District, deny plaintiff's charge and ask this court to dismiss this case, alleging, *inter alia,* that this action is barred by principles of res judicata and collateral estoppel. Specifically, defendants contend that plaintiff raised the claims herein in an earlier lawsuit in federal court. That lawsuit, argue defendants, was dismissed under the statute of limitations; therefore, say the defendants, the dismissal of that earlier lawsuit operates as an adjudication on the merits of the plaintiff's complaint now before the court. The defendants also contend that plaintiff's First Amendment claims were affirmatively raised, heard and

ruled on by the Mississippi Supreme Court in an opinion adverse to plaintiff, a circumstance which additionally warrants this court to dismiss this action, say defendants. Having studied the submitted memoranda and pleadings and having heard the arguments of counsel, this court is persuaded that the defendants' motion for summary judgment should be granted for the reasons which follow.

## I. *PARTIES AND JURISDICTION*

The plaintiff in this action is Peggy Gates of Hattiesburg, Mississippi, a schoolteacher with the Hattiesburg Municipal Separate School District. The defendants are the members of the Board of Trustees in their official capacities: Johnny Dupree, Dr. Jeff Bowman, Dr. Charlotte Tullos, Kathryn Jones, and Dr. Ralph Noonkester. The current Superintendent, James Gordon Walker, is sued in his official capacity, and the former superintendent, Dr. Sam Spinks, is being sued in his individual capacity. The court's jurisdiction is predicated upon Title 28 U.S.C. §§ 1331[5] and 1343(a)(3).[6]

1. Rule 56(b), Fed.R.Civ.P. provides:
   (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

2. Title 42 U.S.C. § 1983 provides in part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. Title 42 U.S.C. § 1988(b) states:
   (b) Attorney's fees
   In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

4. U.S. Const. amend. I provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. Of course, the First Amendment applies to the States through the Fourteenth Amendment of the United States Constitution. *Edwards v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963).

5. Title 28 U.S.C. § 1331 provides:
   The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States.

6. Title 28 U.S.C. § 1343(a)(3) provides:
   (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

## II. *FACTS*

### A. *Plaintiff's State Court Action*

Plaintiff served as a schoolteacher within the Hattiesburg Municipal Separate School System for eighteen years. She spent six (6) years teaching third grade students; a total of eight (8) years teaching fourth, fifth and sixth grade students; and four (4) years teaching eighth grade students. She also was a member of and served as an officer with the Hattiesburg Association of Educators (HAE). She was a member of the Mississippi Association of Educators (MAE) and was elected by her fellow teachers to represent her school on the Professional Affairs Committee, a liaison group between teachers and the school administration. Plaintiff actively participated in the HAE, MAE, and Professional Affairs Committee in promoting improvements in her profession.

Plaintiff's school principal and supervisor, Pricilla Walker, refused to recommend plaintiff for reemployment for the 1981–82 school year. As grounds for this refusal, Ms. Walker asserted that the plaintiff: (1) possessed inadequate and/or improper classroom instructional skills; (2) had excessive absences from the classroom; (3) had refused to abide by school policy with respect to leaves of absence; and (4) had exhibited unprofessional conduct.[7]

The plaintiff then challenged Walker's recommendation for non-reemployment through the administrative hearing process,[8] proclaiming that her 1981 teaching contract had not been renewed because she had antagonized the defendants on numerous occasions by openly criticizing the policies of the superintendent and school board. In due course, plaintiff appeared before an Administrative Hearing Officer who permitted both sides to present and argue the facts. At that administrative hearing, plaintiff expounded on her charges, claiming that she had incurred the wrath of the former superintendent, Dr. Sam Spinks, and the Board when, as chairperson of a grand jury in Forrest County, she had led an investigation of the Hattiesburg Municipal Separate School District; when as head of the Hattiesburg Association of Educators she had requested the State Performance Evaluation and Expenditure Review (PEER) Committee[9] to investigate the contractual agreements between the teachers and the Hattiesburg Municipal Separate Schools; when she had expressed displeasure with the grading and promotional policies of the school; and when on the Professional Affairs Committee she had refused to accommodate the School Board's wishes for her to make a statement that no disciplinary problems existed in the school district. Plaintiff charges that these protected exercises of her constitutional right, and not her classroom or professional behavior, ignited the ire of the defendants and moved them to discharge her in hopes of quieting her confrontative voice.

The Hearing Officer, Hattiesburg attorney Frank Montague, was not sympathetic to plaintiff's position. He found that, as a matter of law, any one of the four charges against plaintiff served as an adequate basis to support plaintiff's dismissal. He found that the evidence supporting these charges was substantial and that plaintiff's criticisms of the Board were not the cause of her non-renewal. The Hearing Officer even cited several instances to show that instead of plotting plaintiff's occupational destruction, Dr. Sam Spinks had actually tried to save the plaintiff's teaching position. In sum, the Hearing Officer concluded that the plaintiff's constitutional and statutory procedural rights had not been violated. After a review of the Hearing Officer's findings, the Board of Trustees followed the recommendation of the Hearing Officer and refused to rehire the plaintiff for the 1981–82 school year.

---

7. For a summary of the basis for these charges and plaintiff's rebuttal, see *Board of Trustees of the Hattiesburg Mun. Separate School Dist. v. Gates*, 461 So.2d 730 (Miss.1984).

8. School teachers and principals whose employment contracts are not renewed by the School Board are entitled to a hearing wherein they may present evidence and be represented by counsel. *See* Miss.Code Ann. § 37–9–111.

9. The establishment of the Joint Legislative Committee on Performance Evaluation and Expenditure Review in 1973 is codified at Mississippi Code Annotated § 5–3–51 et seq. (1972).

Plaintiff appealed the decision of the Board of Trustees to the Forrest County Chancery Court in an action naming the Hattiesburg Municipal Separate School District as defendant. The Forrest County Chancellor, Honorable Michael D. Sullivan, found that the defendant therein had not violated any of plaintiff's procedural rights guaranteed under the School Employment Procedures Law of 1977, Miss.Code Ann. § 37–9–101 to 37–9–113 (1990).[10] Nevertheless, the Chancellor reversed the Board's decision on two grounds: (1) that under the local school district rules of the Hattiesburg Municipal Separate School District, the School District had failed to meet its own imposed burden of proof to show that non-reemployment was rationally related to some legitimate, educational interest of the District; and (2) that the School District had violated plaintiff's federal and state constitutional rights of free speech. Relative to this latter holding, the Chancellor found that Dr. Sam Spinks had retaliated against the plaintiff by not recommending her for reemployment because he did not approve of the manner in which plaintiff had exercised her constitutional right of free speech. The Chancellor then reversed the Board's decision not to reemploy the plaintiff and ordered plaintiff reinstated for the 1981–82 school year.

The Board of Trustees appealed the Chancellor's decision to the Mississippi State Supreme Court. The Mississippi Supreme Court in *Board of Trustees of the Hattiesburg Mun. Separate School District v. Gates*, 461 So.2d 730 (Miss.1984), reversed the Chancellor and reinstated the findings of the Hearing Officer. The Mississippi Supreme Court held that the Hearing Officer was correct in his finding that the Board's decision not to reemploy the plaintiff was unrelated to the plaintiff's free speech activities. The Court stated:

Under the United States Supreme Court decisions, non-renewal of a teacher's contract predicated upon a teacher's exercise of First Amendment rights of free speech has been prohibited. *Perry v. Sinder-*

*mann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In the *Mt. Healthy* case, *supra,* the Supreme Court stated that the burden of proof was on the teacher to show that the conduct was constitutionally protected and that such conduct was a substantial factor in the Board's decision. If the teacher meets this initial burden, then the board must show by a preponderance of the evidence that it would have made the same decision as to the teacher's reemployment in the absence of the protected conduct.