378 So.2d 182 (1979)
Katie Nevels CASHIO, Ind., etc.
v.
BATON ROUGE GENERAL HOSPITAL.
No. 12841.
Court of Appeal of Louisiana, First Circuit.
November 12, 1979.
Rehearing Denied December 27, 1979.
*183 Charest Thibaut, Jr., Baton Rouge, for plaintiff-appellee, Katie Nevels Cashio, Ind., Etc.
George K. Anding, Jr., Baton Rouge, for defendant-appellant, Baton Rouge General Hospital.
Before ELLIS, CHIASSON and PONDER, JJ.
PONDER, Judge.
This is an appeal by defendant from the overruling of an exception of prematurity.
The issues are the appealability and the propriety of the decision.
We reverse.
Plaintiffs sued defendant for damages when a patient died from a "hospital staph" infection acquired during a coronary by-pass operation. Defendant raised the exception of prematurity claiming that before any action can be commenced against a health care provider, the complaint must be presented to a medical review board as required by the Louisiana Medical Malpractice Act, LSA-R.S. 40:1299.41 et seq.
The trial court overruled the exception on the theory that the facts alleged in the petition were not encompassed within the definition of health care services or malpractice as set forth in the statute. The trial court granted an appeal and stayed proceedings.
Since, admittedly, the decision appealed from is not a final judgment we must find irreparable injury before entertaining the appeal.[1]
The Medical Malpractice Act requires that a claim must be submitted to a review board prior to filing of suit and that there can be no ad damnum clause for a specific amount. This has been held to be reasonable and not unconstitutional. Review boards are said to encourage settlements, and to reduce the publicity sometimes given to claims against health care providers for high amounts and are "reasonably related to the guarantee of continued health care for our citizens at reasonable cost." Everett v. Goldman, 359 So.2d 1256 (La.1978).
To require that this defendant forego these benefits, some of which, at least, could not be fully reestablished by a reversal on appeal, we believe would visit irreparable injury on that defendant.[2] We therefore hold that the decision is appealable. We note as corroborative of this view, also, the trial court's grant of a stay pending the appeal.
The provisions of the Act pertinent to this question are contained in La.R.S. 40:1299.41A (1), (7), (8), (9), 40:1299.41E, *184 40:1299.47A (in part) and B, quoted in the footnote.[3]
There is no question that defendant is a health care provider as defined in the Act.
It would seem equally clear that one of the obligations of a hospital to a patient is to provide clean and sterile facilities. The first impression, therefore, would be that plaintiffs' claim, if any, against the hospital for a "staph" infection would be based upon a breach of duty, that would come within the quoted definitions of tort and malpractice.
"Not so" contend the plaintiffs. Their first assertion is that even if the claim be based upon negligence it is still not covered by the Act, as not being within the definition of malpractice because it is not based upon health care or professional services rendered but rather upon the duty owed by a premises owner. Initially, we emphasize that the definition clearly also includes the omission of professional services rendered. While the term treatment is not defined in the Act we cannot agree with plaintiffs' limited and very selective definition as being only those immediately entailed in coronary by-pass surgery. While we do not attempt to supply a universal definition of treatment, we do hold that it does include the furnishing of a clean and sterile environment for all patients. We therefore hold that the negligence complained of is included in the term malpractice.
We therefore cannot agree with plaintiff's contention that the hospital is being sued solely as a premises owner and not as a health care provider. A plaintiff cannot control the progress and procedure of his claim by semantically designating one capacity of two or more belonging to the defendant as the desired one when the statute requires a procedure if the claim fits within its definition. That the duty breached is owed by an owner does not prevent the claim from being one against a health care provider and so subject to the procedure *185 in the Act. A contrary conclusion would permit plaintiffs to avoid the application of the Act by alleging ownership of the premises by the hospital, a practically universal situation. We do not ascribe that intent to the legislature.
We agree that the hospital may be liable as owner in situations outside of malpractice, such as in slip-and-fall and similar tort cases. However, we conclude that the claim of infection by "hospital staph" is squarely within the conduct classified by the Act as malpractice.
Next, plaintiffs contend that the Act does not apply because defendant can be held liable under La.C.C. Articles 2317 and 2322 without fault. We do not have to conclude in this case whether hospitals can be held liable without fault under those articles. Instead we hold, based upon our understanding of the legislative intent, that any conduct complained of should be handled under the procedure of the Act if it can be reasonably said that it comes within the definitions of the Act even though there may be alternative theories for liability.
For these reasons, we reverse the decision of the trial court and it is now ordered that plaintiffs' suit be dismissed as premature. All costs are assessed against plaintiffs.
REVERSED AND RENDERED.
NOTES
[1] La.C.C.P. Art. 2083.
[2] See Everett v. Goldman, supra.
[3] La.R.S. 40:1299.41A(1), (7), (8), and (9):

"(1) `Health care provider' means a person, corporation, facility or institution licensed by this state to provide health care or professional services as a physician, hospital, dentist, registered or licensed practical nurse, pharmacist, optometrist, podiatrist, chiropractor, physical therapist or psychologist, or an officer, employee or agent thereof acting in the course and scope of his employment."
* * * * * *
"(7) `Tort' means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
"(8) `Malpractice' means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
"(9) `Health care' means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement."
La.R.S. 40:1299.41E:
"Subject to R.S. 40:1299.47, a patient or his representative having a claim under this Part for bodily injury or death on account of malpractice may file a complaint in any court of law having requisite jurisdiction. No dollar amount or figure shall be included in the demand in any malpractice complaint, but the prayer shall be for such damages as are reasonable in the premises."
La.R.S. 40:1299.47 A and B:
"A. All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided in this Section."
* * * * * *
"B. No action against a health care provider covered by this Part, or his insurer, may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section and an opinion is rendered by the panel. By agreement of both parties, the use of the medical review panel may be waived."