532 So.2d 501 (1988)
Linda G. PITRE
v.
HOSPITAL SERVICES DISTRICT NO. 1 OF the PARISH OF TERREBONNE, State of Louisiana, d/b/a Terrebonne General Medical Center, and Houma Radiology Associates, P.C.
No. 87 CA 0932.
Court of Appeal of Louisiana, First Circuit.
October 12, 1988.
David J. Shea, Houma, for plaintiff and appellant, Linda G. Pitre.
James C. Walker, Jr., Houma, for defendant and appellee, Hospital Service Dist. No. 1.
Joseph A. Reilly, Jr., Houma, for defendant and appellee, Houma Radiology Associates, P.C.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
Linda G. Pitre (plaintiff) brought suit against Hospital Services District No. 1 of the Parish of Terrebonne, State of Louisiana, d/b/a Terrebonne General Medical Center (Terrebonne General) and Houma Radiology Associates, P.C. (Houma Radiology), alleging that she incurred damages while being tested at Terrebonne General by Houma Radiology. Specifically, she alleges that while tests were being taken by *502 Houma Radiology, the footrest of the x-ray table upon which she was placed fell off as it was being hydraulically raised, causing her to fall to the floor.
Both Terrebonne General and Houma Radiology filed exceptions of prematurity asserting that plaintiff failed to submit her complaint to a Medical Review Panel in compliance with LSA-R.S. 40:1299.47(B). Plaintiff opposed these exceptions, arguing that her petition does not allege "malpractice" as that term is defined in LSA-R.S. 40:1299.41(A)(8), and therefore is outside the ambit of LSA-R.S. 40:1299.47(B).
The trial court maintained both defendants' exceptions. It held that Terrebonne General and Houma Radiology were "[h]ealth care provider(s)" within the meaning of the Medical Malpractice Act[1] and that plaintiff's injuries were incurred while receiving "health care."[2] Plaintiff has appealed.
In Cashio v. Baton Rouge General Hospital, 378 So.2d 182 (La.App. 1st Cir.1979), this court addressed "malpractice" within the meaning of the Medical Malpractice Act. In Cashio a "staph" infection contracted during a coronary bypass operation resulted in fatal injury. Plaintiffs did not comply with LSA-R.S. 40:1299.47(B), and asserted, as does plaintiff here, that their cause of action was not "malpractice" within the meaning of the Act.
In determining that the petition in Cashio did allege a cause of action for malpractice under the Medical Malpractice Act, we noted the definition of malpractice, in pertinent part, to be "any unintentional tort ... based on health care or professional services rendered, or which should have been rendered...."; the definition of tort, in pertinent part, to be "any breach of duty or any negligent act or omission proximately causing injury or damage to another"; and the definition of "health care," in pertinent part, to be "any act, or treatment performed or furnished, or which should have been performed or furnished...." 378 So.2d at 184 (footnote 3). We concluded that the petition in Cashio alleged a breach of the duty on the part of a hospital to provide clean and sterile facilities and that "treatment" as that term is used to define "health care" includes this duty.
The reasoning in Cashio was followed by the Third Circuit in Wyble v. St. Luke General Hospital, 415 So.2d 622 (La. App.3d Cir.1982), wherein that court, noting the "broad" definition of malpractice within the meaning of the Medical Malpractice Act, determined that the alleged negligence of a hospital employee in tripping over intravenous tubing and dislodging the intravenous needle from a patient's arm, was a breach of a duty attending the rendering of treatment contemplated by the Act. 415 So.2d at 624.
The Fifth Circuit, citing Cashio, determined that the use (and malfunction) of a life support system came within the ambit of the Medical Malpractice Act: "In our view, use of a life support system is a part of `professional services rendered.'" Renz v. Ochsner Foundation Hospital/Clinic, 420 So.2d 1008, 1010 (La.App. 5th Cir.1982).
The facts here are analogous to Renz and Wyble and Cashio. The injuries plaintiff alleges were incurred when a machine which was integral to the rendering of treatment did not function properly. These facts are distinguishable from those in Head v. Erath General Hospital, 458 So.2d 579 (La.App.3d Cir.1984), writ denied, 462 So.2d 650 (where a patient slipped on fluid left on the bathroom floor by janitorial personnel) and Reaux v. Our Lady of Lourdes Hospital, 492 So.2d 233 *503 (La.App.3d Cir.), writ denied, 496 So.2d 333 (1986) (where a patient was raped on hospital premises), cited by plaintiff. In both these cases, the only connection with "health care" as that term is employed by the Medical Malpractice Act, is that the respective incidents occurred in hospitals.
For the reasons expressed hereinabove, the judgment maintaining defendants' exceptions of prematurity is affirmed. Costs of this appeal are assessed to plaintiff.
AFFIRMED.
NOTES
[1] LSA-R.S. 40:1299.41 through 1299.48. LSA-R. S. 40:1299.41(A)(1) (amended 1986 and 1987) defines "health care provider" as:

a person, corporation, facility or institution licensed by this state to provide health care or professional services as a physician, hospital, dentist, registered or licensed practical nurse, pharmacist, optometrist, podiatrist, chiropractor, physical therapist or psychologist, or an officer, employee or agent thereof acting in the course and scope of his employment.
[2] Id. at 1499.41(A)(9) defines "health care" as:

any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.