600 So.2d 577 (1992)
Gordon D. SEWELL, et ux
v.
DOCTORS HOSPITAL.
No. 91-CC-1668.
Supreme Court of Louisiana.
May 26, 1992.
John Layne Hammons, Nelson, Hammons & White, Shreveport, for applicant.
Gerald Martin Johnson, Lunn, Irion, Johnson, Salley & Carlisle and Sidney Earl Cook, Jr., Cook, Yancey, King & Galloway, Shreveport, for respondents.
Larry M. Roedel and David A. Woolridge, Jr., Roedel, Parsons, Forrester & Koch, Baton Rouge, for Louisiana Patient's Compensation Fund Oversight Bd., amicus curiae.
LEMMON, Justice.
The issue in this case is whether plainitff's action against Doctors Hospital, in which he seeks to recover the damages he sustained when his hospital bed collapsed during a meal while he was recuperating from cervical surgery, constitutes an action based on medical malpractice under La. Rev.Stat. 40:1299.41-40:1299.48 so as to require initial submission of the claim to a medical review panel and to limit recovery to $500,000 and future medical expenses.
Plaintiff was admitted to Doctors Hospital for cervical surgery after sustaining an injury at work one month earlier. According to his petition, there were no complications from the surgery, and he progressed well initially. Two days after the surgery, however, while plaintiff was in the hospital bed with the head of the bed raised to accommodate him in a sitting position to receive his evening meal, the hinge on the raising mechanism of the bed broke, and *578 the head of the bed dropped suddenly to the reclining position. The drop caused plaintiff to fall downward violently and to strike his neck and head on the bedside table.
Plaintiff filed the present action in district court against Doctors Hospital to recover damages for the injuries sustained in the collapse of the bed. The petition asserted that the Hospital was strictly liable for providing a bed that was defective and unreasonably dangerous in normal use. The petition did not allege or suggest any negligence on the part of the Hospital which caused the bed to be defective or which contributed to the fall.
The Hospital responded with an exception of prematurity. The Hospital asserted that plaintiff's action arose under the Medical Malpractice Act and that the filing in court was premature under La.Rev.Stat. 40:1299.47 B(1), since plaintiff had not submitted the claim to a medical review panel.
The district court overruled the exception of prematurity without assigning reasons. On the Hospital's application for supervisory writs under La.Code Civ.Proc. art. 2201, the court of appeal peremptorily reversed the judgment of the district court and maintained the exception of prematurity. The court, in an unpublished memorandum opinion by a divided panel, stated the following reasons:
As a duly qualified health care provider defendant, Doctors Hospital, is entitled to the protection of the medical malpractice act for all claims arising out of "malpractice" as defined in LSA-R.S. 40:1299.41 A(8). The definition of malpractice in the Act specifically includes any unintentional tort based on health care or professional services rendered a patient to include the handling of a patient.
The allegations of the petition specifically states (sic) that plaintiff was recovering from surgery at Doctor's Hospital when his bed collapsed causing further injury. Even though the petition asserts liability based solely upon a "defective bed provided by Doctor's Hospital which was unreasonably dangerous in its normal and intended use", it falls under the medical malpractice act which requires that it first be submitted to the Louisiana Commissioner of Insurance and a medical review panel. Like Pitre v. Hospital Services District No. 1, 532 So.2d 501 (La.App. 1st Cir.1989) the hospital bed was part of the health care and professional services rendered to plaintiff. This is specifically part of the type of health care provided by a hospital. (emphasis added).
We granted certiorari to review the decision of the court of appeal. 587 So.2d 685.
The principal purpose of the Medical Malpractice Act is to limit the liability of health care providers who qualify under the Act by maintaining specified basic malpractice insurance and by contributing a surcharge to the Patients Compensation Fund. As long as a health care provider remains qualified under the Act, the health care provider and his insurer are liable for malpractice only to the extent provided in the Act.[1] La.Rev.Stat. 40:1299.45 A.
The Medical Malpractice Act's limitations on the liability of a health care provider are special legislation in derogation of the rights of tort victims. As such, the coverage of the Act should be strictly construed. These limitations apply only in cases of liability for malpractice as defined in the Act. Any other liability of the health care provider to the patient is not subject to these limitations.
La.Rev.Stat. 40:1299.41 A(8), as amended in 1987, defines "malpractice" for the purposes of the Act as follows:
"Malpractice" means any unintentional tort or any breach of contract based on *579 health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.[2] (emphasis added).
La.Rev.Stat. 40:1299.41 A(7) and (9) further define "tort" and "health care" as follows:
"Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
"Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.
The court of appeal interpreted a health care provider's strict liability for injuries to a patient caused by defective furniture under the hospital's custody as liability under La.Rev.Stat. 40:1299.41 A(8) for an "unintentional tort ... based on health care ... rendered ... to a patient." We do not agree that the Legislature intended that a health care provider's strict liability for defects in hospital furniture is to be included in the scope of the Act limiting liability for malpractice.[3] La.Rev. Stat. 40:1299.41 A(8) distinguishes between the liability of a health care provider for negligent acts or omissions in rendering health care or professional services to a patient and the liability of a health care provider for a defective thing in its custody which causes injury to a patient in the absence of negligence by the provider.
The Legislature originally defined malpractice principally as any unintentional tort based on health care or professional services which were rendered or should have been rendered by a health care provider to a patient, clearly indicating an intent to include liability in negligence for all acts and omissions by a health care provider during the furnishing of medical care or treatment or the confinement of a patient.[4] However, the Legislature further defined *580 malpractice to "also include[]" a health care provider's strict liability for some injury-causing defective things, specifically enumerating defective blood, tissues, transplants, drugs, medicine and prosthetic devices used during the course of the patient's treatment.[5] Clearly, the Legislature did not intend to include liability for all defective things in the custody of the provider which cause injury to a patient. By including liability for all negligent acts or omissions by a health care provider in providing care and services and for only those defective things which are specifically enumerated, the Legislature intended to exclude from the definition of malpractice a health care provider's strict liability for other defective things, unless negligence by the health care provider caused the thing to be defective or unreasonably dangerous.[6]
In the present case plaintiff based the action solely on strict liability for a defective thing under the defendant's custody, alleging that the bed which caused his injury was unreasonably dangerous in normal use and therefore defective.[7] A defective hospital bed is not one of the defective things specifically enumerated in the definition of malpractice for which the Act limits the health care provider's strict liability. Moreover, plaintiff has not alleged that any act or omission by the health care provider caused the bed to be defective or contributed to its collapse, nor has plaintiff alleged that the health care provider knew or should have known of the defects. Therefore, the Medical Malpractice Act is not applicable to the cause of action alleged in this suit.
Accordingly, the judgment of the court of appeal is reversed, the exception of prematurity is overruled, and the case is remanded to the district court for further proceedings.
MARCUS, J., concurs and assigns reasons.
HALL, J., joins in the opinion and also assigns concurring reasons.
MARCUS, Justice (concurring).
I concur, being of the opinion that the collapse of the hospital bed in this case was not related to health care or professional services rendered. Therefore, the Medical Malpractice Act is not applicable.
La.R.S. 40:1299.41 (A)(8) in defining malpractice for the purpose of the act provides for liability of a health care provider for negligent acts or omissions in rendering health care or professional services to a patient. The act states that it "also includes all legal responsibility ... arising from defects in blood, tissue...." Nowhere does it impose strict liability for these defective things. Therefore, I do not agree with the distinction made by the majority in reaching the result that it did. Further, it should be noted that the legislature amended La.Civ.Code art. 2322.1 in 1990. That article, dealing with users of blood, organs and tissue, now provides "[s]trict liability and warranties of any kind without negligence shall not be applicable...." In light of this amendment, it is clear the majority's reasoning should not apply to post-1990 cases.
*581 HALL, Justice, concurring.
I join in the majority opinion and concur to note my view that plaintiffs should be bound by their argument before this court that they do not assert or rely on any negligence on the part of the hospital or its staff. Negligence in the maintenance or use of a hospital bed uniquely designed for and used in the treatment or handling of a patient would be malpractice subject to the Medical Malpractice Act. No evidence of any such negligence should be allowed at the trial of the case.
NOTES
[1] The principal advantages afforded to health care providers by the Act are the requirement that all claims for malpractice must be submitted initially to a medical review panel and the limitation of liability for malpractice of the health care provider and his insurer to the required basic insurance coverage, with the Patients Compensation Fund responsible for the remainder of the malpractice victim's damages up to $500,000 and for all future medical expenses.
[2] La.Acts 1987, No. 187, added the emphasized language to the original definition.
[3] The courts of other states, in determining the scope of medical malpractice statutes, have considered whether the particular wrong is "treatment related" or caused by a dereliction of professional skill, whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and whether the pertinent act or omission involved assessment of the patient's condition. Holly P. Rockwell, Annotation, What Patient Claims Against Doctor, Hospital, or Similar Health Care Provider Are Not Subject to Statutes Specifically Governing Actions and Damages for Medical Malpractice, 89 A.L.R. 4th 887 (1991).
[4] In the 1987 amendment the Legislature simply emphasized that negligent acts and omissions constituting malpractice included the failure to render services in a timely fashion and negligence in loading and unloading a patient.

In Cashio v. Baton Rouge General Hospital, 378 So.2d 182 (La.App. 1st Cir.1979), a hospital's negligent omission in failing to furnish a sterile environment was held covered by the Act. In Wyble v. St. Mark General Hospital, 415 So.2d 622 (La.App. 3rd Cir.1982), a hospital employee's negligent act in tripping over an IV tubing was held covered by the Act. In Pitre v. Hospital Services District No. 1 of the Parish of Terrebonne, 532 So.2d 501 (La.App. 1st Cir.1988), a patient sustained injuries when the footrest of an X-ray table fell off as the table was being raised. Citing Cashio and Wyble as analogous, the court held that liability for the malfunctioning of equipment "which was integral to the rendering of treatment" was covered by the Act. While the hospital bed in the present case was not integral to the rendering of treatment, Pitre is expressly disapproved insofar as it conflicts with this decision.
[5] La.Rev.Stat. 40:1299.41 was originally enacted in 1975, at a time when health care providers were strictly liable for medical use of defective blood and possibly tissues and organs. DeBattista v. Argonaut-Southwest Insurance Co., 403 So.2d 26 (La.1981). La.Civ.Code art. 2322.1, purporting to provide immunity to health care providers from certain strict liability, was added in 1981.
[6] Thus, a health care provider's liability may arguably be included under the Act when a patient is injured in a fall from the hospital bed because the provider's employee was negligent under the particular circumstances in failing to raise the sides, but the provider's liability may not be included under the Act when the patient is injured in a fall because the same bed collapsed from a metallurgical defect, unless the provider caused the defect or knew or should have known of the defect and neglected to repair it.
[7] Whether a health care provider is strictly liable in a particular case for an injury-causing defective thing is a question to be decided in each case and is beyond the scope of this opinion.