819 So.2d 1134 (2002)
Theodore HARRIS, Jr.
v.
Dr. Melville J. STERNBERG and ITT Hartford Insurance Company.
Theodore Harris, Jr.,
v.
Hartford Insurance Company of the Southeast, Louisiana Medical Mutual Insurance Company and Dr. Melville J. Sternberg.
Nos. 2001-CA-1827, 2001-CA-2170.
Court of Appeal of Louisiana, Fourth Circuit.
May 22, 2002.
*1135 Mark W. Smith, Metairie, LA, for Plaintiff/Appellant.
Elizabeth Smyth Sirgo, Chopin, Wager, Cole, Richard, Reboul & Kutcher, LLP, *1136 Mandeville, LA, for Defendant/Appellant, Hartford Insurance Co. of the Southeast.
Arthur F. Hickham, Jr., Adams and Reese L.L.P., New Orleans, LA, for Defendant/Appellee, Louisiana Medical Mutual Insurance Co.
Michael G. Cordes, David D. Bravo, Hoffman, Siegel, Seydel, Bienvenu & Centola, New Orleans, LA, for Defendant/Appellee, Dr. Melville J. Stanberg.
(Court composed of Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
Plaintiff[1] and Hartford Insurance Company of the Southeast (Hartford) appeal a summary judgment granted in favor of Louisiana Medical Mutual Insurance Company (LAMMICO). For the following reasons, we reverse.

FACTS:
The facts of this case are undisputed. On May 28, 1996, Theodore Harris, Jr., visited the office of Dr. Melville Sternberg for a scheduled appointment. Dr. Sternberg was treating Mr. Harris for morbid obesity, as well as other medical conditions. Charlotte Holm, a certified medical nursing assistant in Dr. Sternberg's employ, called Mr. Harris to the examining room, and asked him to step onto a portable beam scale to be weighed. Mr. Harris placed his walker around the scale, lifted his right foot onto the scale's platform, braced himself against the wall with his left arm, and attempted to lift his left leg onto the platform. As he lifted his left foot onto the platform, the scale began to move, Mr. Harris lost his balance, and fell to the floor.
This particular scale was not the type normally used in medical offices. Dr. Sternberg explained that a friend who owned a hardware store gave it to him for the specific purpose of weighing his patients who weighed in excess of 350 pounds.

ACTION BELOW:
Mr. Harris first filed suit against Dr. Sternberg and Hartford, his commercial general liability insurer, in May of 1997. In December of 1999, Mr. Harris filed a second suit again naming Dr. Sternberg and Hartford as defendants, but adding LAMMICO, Dr. Sternberg's professional liability insurer, as a defendant. Prior to filing either suit, Mr. Harris requested review by a medical review panel. In October of 1999, the panel issued an opinion finding that the evidence did not support the conclusion that Dr. Sternberg failed to meet the applicable standard of care. The two cases were consolidated in the trial court.
In July of 2000, plaintiff filed a motion for declaratory judgment, or, in the alternative, motion for partial summary judgment. Plaintiff sought to have the court declare that both the Hartford and LAMICO policies provided coverage for his injuries. Plaintiff asserted that his petition alleged two different theories of liability, one in malpractice covered by the LAMMICO professional liability policy, and one for general negligence, covered by the Hartford commercial general liability policy.
In October of 2000, Hartford filed a motion for summary judgment arguing that plaintiffs petition alleged damages that were incurred in the course of medical treatment, and the Hartford policy excluded claims for medical malpractice. Therefore, Hartford was entitled to summary judgment as a matter of law.
*1137 LAMMICO also filed a motion for summary judgment asserting that Mr. Harris' claims arose in ordinary negligence, because neither the doctor nor his assistant were assisting Mr. Harris at the time of his fall, nor were they administering medical treatment. Therefore, because plaintiffs claims did not arise from professional services or medical treatment rendered, the professional liability policy excluded coverage. LAMMICO also asserted that the coverage afforded by its policy and the Hartford policy was mutually exclusive.
Dr. Sternberg filed an opposition to Hartford's motion and, in the alternative, to LAMMICO's motion. The doctor contended that the injuries sustained by Mr. Harris were not related to any acts of medical malpractice, but, if the trial court found otherwise, then the LAMMICO policy did provide coverage.
On November 27, 2000, the trial court rendered judgment denying plaintiffs motion for declaratory judgment, and a separate judgment denying Hartford's motion for summary judgment. On November 30, 2000, the trial court granted summary judgment in favor of LAMMICO. Written reasons for judgment were issued in connection with each judgment.
Hartford filed a motion to have the summary judgment in favor of LAMMICO certified as a final, appealable judgment, which the trial court granted.
Hartford and plaintiff have appealed the granting of the summary judgment in favor of LAMMICO, and the plaintiff has additionally appealed the denial of its motion for declaratory judgment. However, the latter judgment was not certified as a final, appealable judgment pursuant to La. Code Civ. Proc. art. 1915 B. Therefore, it is not properly before this Court.

DISCUSSION:
Summary judgments are reviewed de novo, applying the same standards as used by the trial court. Magnon v. Collins, 98-2822, p. 5 (La.7/7/99), 739 So.2d 191, 195. An appellate court asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Id.
The trial court's reasons for granting summary judgment in favor of LAMMICO were set forth in its reasons for judgment relative to plaintiffs motion for declaratory judgment. The court found that general negligence was applicable to the facts of the case. Specifically, the court found that plaintiff slipped and fell while attempting to mount the special scale in the doctor's office, without assistance from the doctor or his staff. Further, the court determined that the plaintiff's testimony raised issues of product or premises liability, theories within the scope of general tort liability. Therefore, plaintiff's claim did not come under the Medical Malpractice Act.
In making our determination, we are cognizant of the principle that limitations on the liability of a health care provider are special legislation in derogation of the rights of tort victims and, as such, the coverage of the Act should be strictly construed. The limitations apply only in cases of liability for malpractice as defined in the Act, and any other liability of a health care provider to the patient is not subject to these limitations. Sewell v. Doctors Hosp., 600 So.2d 577 (La.1992).
The Medical Malpractice Act applies only to "malpractice;" all other tort liability on the part of a qualified health care provider is governed by general tort law. Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977 (La.2/29/00), 758 So.2d 116. "Malpractice" is defined by La.Rev.Stat. 40:1299.41A(8) as follows:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, *1138 or which should have been rendered, by a health care provider, to a patient....
Louisiana Revised Statute 40:1299.41A(7) and (9) further define "tort" and "health care" as follows:
(7) "Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
(9) "Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.
In Coleman v. Deno, 01-1517, 01-1519, 01-1521 (La.1/25/02), 813 So.2d 303, the Supreme Court reiterated the factors for determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the Act:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and
(3) whether the pertinent act or omission involved assessment of the patient's condition.
Coleman, 01-1517, 01-1519, 01-1521 at p. 8, 813 So.2d 303, citing Sewell v. Doctors Hosp., 600 So.2d 577, 579, n. 3 (La.1992)(quoting Holly P. Rockwell, Annotation, What Patient Claims Against Doctor, Hospital, or Similar Health Care Provider Are Not Subject to Statutes Specifically Governing Actions and Damages for Medical Malpractice, 89 A.L.R.4th 887 (1991)). The Coleman court recognized three additional factors listed in the quoted annotation, and added them to the list of factors to be considered when determining if conduct should be considered malpractice. Those factors are:
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
(5) whether the injury would have occurred if the patient had not sought treatment, and,
(6) whether the tort alleged was intentional.
Id. at pp. 8-9, 813 So.2d 303.
Applying the above-enumerated factors to the facts of this case, leads this Court to the conclusion that the incident complained of in Mr. Harris' petitions is covered by the provisions of the Medical Malpractice Act.

1. Whether the particular wrong is "treatment related" or caused by a dereliction of professional skill
Dr. Sternberg testified that he was treating Mr. Harris for morbid obesity and hypertension, among other health problems. However, Mr. Harris' appointment on the date in question was specifically for treatment of his weight problem. Dr. Sternberg was using a new protocol to treat morbid obesity, and testified that Mr. Harris' weight was a critical factor relative to this treatment.
There have been numerous cases addressing the issue of whether an act of negligence by a doctor or his staff falls under the auspices of the Medical Malpractice *1139 Act, or is an act of general negligence not covered by the Act.
In Sewell v. Doctors Hospital, supra, plaintiff, who had undergone cervical surgery, was injured when his hospital bed collapsed. Plaintiff sued the hospital alleging that it was strictly liable for providing a bed that was defective and unreasonably dangerous in normal use. Plaintiff did not allege that any act or omission on the part of the hospital caused the bed to be defective or contributed to its collapse, nor did plaintiff allege that the hospital knew or should have known of the defect. The hospital filed an exception of prematurity, arguing that the claim came under the Medical Malpractice Act, and, therefore, was subject to review by a medical review panel. The trial court denied the exception, but the appeals court reversed, granting the exception of prematurity. The Supreme Court granted certiorari, and reversed, stating:
Clearly, the Legislature did not intend to include liability for all defective things in the custody of the provider which cause injury to a patient. By including liability for all negligent acts or omissions by a health care provider in providing care and services and for only those defective things which are specifically enumerated, the Legislature intended to exclude from the definition of malpractice a health care provider's strict liability for other defective things, unless negligence by the health care provider caused the thing to be defective or unreasonably dangerous. (emphasis added)
Id. at 580. The Court found that the plaintiff based his action solely on strict liability for a defective thing under the defendant's custody. Thus, because a hospital bed was not one of the things enumerated in the definition for malpractice, and plaintiff did not allege any negligence on the part of the health care provider that caused the bed to be defective or contributed to plaintiff's injury, the Act was not applicable.[2]
A review of the petitions filed in these consolidated cases reveal allegations of negligence by Dr. Sternberg and his nurse assistant. Specifically, in the petition filed in May of 1997, plaintiff alleges that Dr. Sternberg's employee did not properly secure the scale upon which plaintiff was to be weighed. In the petition filed in December of 1999, plaintiff again alleges that the scale used by Dr. Sternberg was not intended for use by obese or infirm patients, but, nonetheless, Dr. Sternberg used it in his medical practice. Also, despite knowing that the scale had the capability to roll (the nurse assistant testified that she rolled it away from the wall to weigh Mr. Harris), Dr. Sternberg did nothing to prevent the scale from rolling such as blocking the wheels. We interpret plaintiff's petitions to allege negligence by the doctor, not to allege that the scale itself was defective. Thus, pursuant to the Supreme Court's pronouncement in Sewell, the allegations of negligence bring this action under the Act.

2. Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached
In Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228, the *1140 Supreme Court held that when a medical malpractice case involves allegations of "obvious negligence," no expert testimony is required to establish a physician's fault. An example of this type of obvious negligence is failure to attend to a patient when the circumstances demonstrate the serious consequences of the failure.
While we make no judgment on whether the facts of this case can be evaluated based on common knowledge, it is not outside the realm of possibility that experts could be called to testify to support or controvert plaintiff's claims of negligence.

3. Whether the pertinent act or omission involved assessment of the patient's condition
As stated previously, the specific facts of this case warrant a finding that weighing Mr. Harris, who was being treated for morbid obesity, was necessary to assess his response to treatment.

4. Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform
This incident clearly occurred in the context of a physician-patient relationship between Dr. Sternberg and Mr. Harris.

5. Whether the injury would have occurred if the patient had not sought treatment
This injury allegedly occurred when Dr. Sternberg's nurse assistant instructed Mr. Harris to step onto a platform scale to be weighed. The petition alleges, and Dr. Sternberg confirms in his deposition testimony, that Mr. Harris was at the doctor's office on the date in question specifically to be treated for morbid obesity. Dr. Sternberg also testified that he was utilizing a new protocol for treatment of Mr. Harris' obesity. Clearly, weighing Mr. Harris was a necessary component in monitoring his progress. Equally clear is the fact that if Mr. Harris had not sought treatment for his weight condition, he would not have been weighed on this particular type of scale.

6. Whether the tort alleged was intentional 
There are no allegations that Dr. Sternberg's actions or that of his nurse were intentional.
Accordingly, we conclude that the claims against Dr. Sternberg fit squarely within the definition of malpractice. La.Rev.Stat. 40:1299.41A (8) and (9).
In its appellate brief and in its original memorandum in support of its motion for summary judgment, LAMMICO raises the fact that the two policies in question, i.e., LAMMICO's professional liability policy and Hartford's commercial general liability policy, are mutually exclusive. The November 30, 2000, judgment does not address that issue, and it is therefore, not before this Court.
Accordingly, for the reasons assigned, we reverse the judgment of the trial court granting summary judgment to LAMMCO, and remand this matter for further proceedings.
REVERSED.
NOTES
[1] Original plaintiff, Theodore Harris, Jr., died while this suit was pending. His widow and children have been substituted as parties plaintiff.
[2] In Pitre v. Hosp. Services Dist. No. 1, Parish of Terrebonne, 532 So.2d 501 (La.App. 1 Cir. 1988), the Third Circuit held that a plaintiff's claim for damages incurred when she fell from an x-ray table was covered under the Act. The Supreme Court expressly disapproved of this decision because the plaintiff did not make any allegations of negligence on the part of the hospital, but, rather, had only alleged that the x-ray table in the hospital's custody and control was defective. Sewell, 600 So.2d at 579, n. 4.