JACHARLES R. JONES, Judge.
The Appellants, Lloyd and Janet Flo-rane, appeal.the judgment of the district court dismissing their claims for excess damages against the Appellees, the Louisiana Patients’ Compensation Fund and Oversight Board. Following a review of the record, we reverse the judgment of the district court.
Lloyd and Janet Florane filed a claim for excess damages arising out of an incident on April 25, 1990 against the Louisiana Patients’ Compensation Fund and Oversight Board (hereinafter “LPCFOB”). The Floranes alleged that'Pendleton Memorial Methodist Hospital (hereinafter “Pendleton Hospital”) deviated from the applicable standard of care by placing Lloyd Florane in a broken and defective hospital bed. The Floranes also alleged that the hospital employees were aware of the broken railing, but that no one from the hospital attempted to repair the bed prior to Mr. Florane’s fall. The bed rail allegedly gave way as Mr. Florane was getting out of bed, which caused him to fall and strike his head on an infusion pump stand. As a result of this alleged negligence, Mr. Florane sustained a fractured nose, contusion and scars of the forehead, teeth damage, exacerbation of a previous neck injury and a new injury to his cervical spine.
*644 | gMr. Florane, a forty-nine year old male, presented to Pendleton Hospital on April 24, 1990 complaining of black bowel movements, weakness, fainting, and sweating. He was admitted to the hospital with a diagnosis of GI bleeding secondary to increased stress and medication.
Mr. Florane received blood transfusions because of significant anemia, and was given fluids and pain medication for lower back pain and headaches. At approximately 3:20 a.m. on April 25, 1990, the nurse found Mr. Florane on the floor with a laceration to his forehead. Pendleton Hospital claims that when asked what happened, Mr. Florane stated “I got up and blacked out”. At 3:30 a.m. when Mr. Flo-rane was more coherent, he stated to the nurse as indicated by hospital records that he “remembers getting up to sit on the side of bed and looking for slippers on floor beside bed. Then feeling nauseated and whoozy. Called nurse, then blacked out. Bed in Tre'ndelenberg now.” Pendle-ton Hospital further alleged that the nursing notes specifically states that the bed-rails were up by two on the 11:00 p.m. to 7:00 a.m. shift, and that there was no notation of broken bed rails on the floor of the patient’s room nor that the bed collapsed.
At 3:45 a.m., ML Florane was taken to the emergency room and treated. At 7:00 a.m. the same morning, he was returned to his room, and placed back into the same bed with siderails elevated by four. Ms. Florane was present at this time, and made no objection to her husband being placed back in the “defective” bed. Pen-dleton Hospital alleged that had the bed-rails presented a danger to Mr. Florane, the staff would not have placed Mr. Flo-rane back in the same bed.
On March 18, 1991, the Floranes filed a request for review of the malpractice claim with the Office of the Patients’ Compensation Fund. On Mareh 9, 1995, the medical review panel concluded that “the evidence does not support 13the conclusion that the defendant, Pendleton Memorial Methodist Hospital, failed to meet the applicable standard of care as charged in the complaint.” [1] The panel reasoned, “Mr. Flo-rane was hypovolemic from G.I. bleeding, sat up in the middle of the night, looked down for his slippers and passed out.”[2]
Subsequent to the Medical Review Panel proceeding, the Floranes and Pendleton Memorial Hospital reached a settlement agreement in the amount of $85,000 with a reservation of rights to proceed for excess damages against the LPCFOB.
On October 5, 1998, the Floranes filed a Petition for Excess Damages against the LPCFOB. The LPCFOB filed a Motion for Summary Judgment on the basis that the claim did not fall under the purview of the Medical Malpractice Act. The motion was granted by the district court dismissing the Floranes’ claim. The Floranes filed a Motion for Reconsideration, which was denied.
On April 16, 2001, the LPCFOB filed a Petition and Order for Devolutive Appeal, which was never signed. The LPCFOB contends that the district court refused to sign the order upon realizing that he mistakenly granted the summary judgment. The Floranes filed a Second Motion for .New Trial/Reconsideration. The district court reversed it’s original ruling and denied the Motion for Summary Judgment filed by the LPCFOB. The district court stated in its Reasons for Judgment,
I inadvertently granted the Summary Judgment filed by and on behalf of the *645 Louisiana Patients’ Compensation Fund Oversight Board when it was never my intention to do so. When the Judgment on the Hearing for the Motion for Summary Judgment came in and I read it, I then realized that I had granted the Summary Judgment |4when it was my intention to deny it. Thus, because of my error, I vacate the Summary Judgment and enter a new one denying the Summary Judgment.
The LPCFOB filed an Application for Supervisory Writs to this Court, which opined that the Second Motion for Reconsideration was improperly granted and reinstated the original ruling of the district court, because the district court was without jurisdiction to entertain the second Motion for New Trial and that the Flo-ranes appropriate remedy was an appeal: This Court did not address the merits of the appeal. As a result of the writ disposition, the Floranes filed the instant appeal.
The question on review is whether the district court erred by granting the Motion for Summary Judgment filed by the LPCFOB, dismissing the Florane’s claim with prejudice.
The standard of review for appellate courts in reviewing summary judgment is de novo review, using the same criteria applied by the district courts to determine whether summary judgment is appropriate in the first instance. Stevedoring v. Kahn, 726 So.2d 53 (La.App. 4 Cir.1998); Independent Fire Insurance Company v. Sunbeam Corporation, 99-2257, (La.2/29/00) 755 So.2d 226.
La. C.C.P. art. 966(B) in pertinent part states that:
The judgment sought shall be rendered forthwith if the pleadings, depositions,answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
Additionally, La. C.C.P. art. 966(c)(1) states that:
After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to | Bmaterial fact, and that the mover is entitled to judgment as a matter of law shall be granted.
The LPCFOB argues that the Floranes’ claim fails t'o meet the statutory criteria for a medical malpractice claim, but fall within a general negligence category. The LPCFOB based its argument for summary judgment on the holding of Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992), contending that the claim does not fall within the category of “deficits” enumerated under La. R.S. 40:1299.41 A(8), and that liability for malfunctioning equipment would be considered malpractice if it was integral to the rendering of treatment, which the hospital bed was not integral in rendering treatment in this case. Id. at 580. In Sewell, the Louisiana Supreme Court held that the healthcare provider’s strict liability for defects in hospital furniture did not fall within the scope of the Medical Malpractice Act. Id at 580. However, the Court went on to state that a healthcare provider’s strict liability would fall under the definition of malpractice if negligence by the healthcare provider caused the thing to be defective or unreasonably dangerous; or if the provider knew or should have known of the defect and neglected to repair it. Id at fn. 6. The Floranes argue that this case fits perfectly within the exception contemplated by the Supreme Court in Sewell, because the Flo-ranes specifically alleged negligence by Pendleton Hospital in their Petition for Damages. Further, the Floranes contend that the deposition testimony of Mrs. Flo-rane supports these allegations, and that *646 her testimony establishes the fact that Pendleton Hospital, through its agents and employees, knew or should have known the railing was broken, yet neglected to repair it. The Floranes contend that their claim was not based on the doctrine of strict liability, but rather | fion the theory of negligence, and therefore, governed by the Medical Malpractice Act according to Se-well.
The LPCFOB argues that there was no objective evidence that the nursing staff had constructive notice that the bed rails were defective. The LPCFOB argues that the record is devoid of any maintenance logs that show previous problems with the bed, or warnings to staff that the 'bed needed to be repaired. The LPCFOB further argues that the opinion of the medical review panel is considered expert evidence at the summary judgment stage. Richoux v. Tulane Medical Center, 617 So.2d 13 (La.App. 4 Cir.1993). They contend that the Floranes have no proof, other than their self-serving allegations, that the hospital staff knew that the bed that Mr. Florane was placed in was defective.
However, the Floranes argue that circumstantial evidence, and the uncontro-verted testimony of Mrs. Florane is sufficient to defeat the motion for summary judgment. Norton v. Claiborne Electric Co-op, Inc., 31,886 (La.App. 2 Cir. 5/5/99), 732 So.2d 1256; Lyons v. Airdyne Lafayette, Inc., 563 So.2d 260 (La.1990). They further contend that Mrs. Florane’s testimony must be taken at face value for the purposes of evaluating the merits of a Motion for Summary Judgment, and that “factual inferences drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent’s favor.” Knowles v. McCright’s Pharmacy, Inc., 34,559 (La.App. 2 Cir. 4/4/01), 785 So.2d 101, 103. The Floranes argue that since the issue of whether Pendleton Hospital had knowledge of the bed defect is essential to their claim, and are in dispute, that the Motion for Summary Judgment was improperly granted.
The Floranes argue that they have been unfairly prejudiced by the district court’s granting of the motion because the LPCFOB alleges that this case does not 17fall under the ambit of the Medical Malpractice Act, which released them from coverage, yet Pendleton Hospital in 'it’s answer admitted that this matter arises under the Medical Malpractice Act in order to limit the liability of Pendleton Hospital to $100,000.
We agree with the Floranes. In Sewell, the Supreme Court stated:
By including liability for all negligent acts or omissions by a health care provider in providing care and services and for only those defective things which are specifically enumerated, the Legislature intended to exclude from the definition of malpractice a health care provider’s strict liability for other defective things, unless negligence by the health care provider caused the thing to be defective or unreasonably dangerous.
Sewell at 580.
The Supreme Court further explained in footnote six of the same case:
Thus, a health care provider’s liability may arguably be included under the Act when a patient is injured in a fall from the hospital bed because the provider’s employee was negligent under the particular circumstances in failing to raise the sides, but the provider’s liability may not be included under the Act when the patient is injured in a fall because the same bed collapsed from a metallurgical defect, unless the provider caused the defect or knew or should have known of the defect and neglected to repair it.

Id.

 The Floranes alleged negligence on the part of Pendleton Hospital. Specifi *647 cally, -Mrs. Florane testified that a nurse indicated that the bed was slightly defective, but usable when Mr. Florane was placed in the bed. Although, Mrs. Flo-rane’s testimony is circumstantial, “circumstantial evidence may establish the existence of a genuine issue of material fact.” Norton at 1260. However, the response of the adverse party “must set forth specific facts showing a genuine issue |sfor trial.” Id. We find that Mrs. Florane’s testimony sets forth specific facts regarding the statements of the nurse and her promise to have the bed repaired. This evidence is sufficient for the purposes of defeating a Motion for Summary Judgment.
Additionally, for purposes of determining summary judgment, a fact is “material” when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Knowles v. McCright’s Pharmacy, Inc., 34,559 (La.App. 2 Cir. 4/4/01), 785 So.2d 101, 103-104. Clearly the issue of whether the hospital had notice of the defect and whether it was negligent in its repair is essential to the resolution of this matter, and is in dispute between the parties. The granting of the summary judgment was inappropriate in this instance.

DECREE

•For the foregoing reasons, we reverse the judgment of the district court granting the Motion for Summary Judgment filed by the Louisiana Patients’ Compensation Fund and Oversight Board and against the Floranes dismissing their claim with prejudice.

REVERSED.

. Opinion, Medical Review Panel.

. Opinion, Medical Review Panel.