870 So.2d 474 (2004)
Preston ROMERO, Plaintiff-Appellee
v.
WILLIS-KNIGHTON MEDICAL CENTER, Defendant-Appellant.
No. 38,374-CA.
Court of Appeal of Louisiana, Second Circuit.
April 7, 2004.
Rehearing Denied May 6, 2004.
*475 Watson, Blanche, Wilson & Posner by Chris J. LeBlanc, Baton Rouge, for Appellant.
Ronald D. Miciotto, for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
GASKINS, J.
The defendant, Willis-Knighton Medical Center d/b/a Willis-Knighton Pierremont Health Center (Willis-Knighton), seeks review of a trial court judgment denying its exception of prematurity. The defendant argues that the claims of the plaintiff, Preston Romero, fall under the Louisiana Medical Malpractice Act, and must initially be submitted to a medical review panel. For the following reasons, we affirm the trial court judgment.

*476 FACTS
The plaintiff claims that on September 12, 2002, he was undergoing physical therapy at Willis-Knighton following knee surgery. While walking on a treadmill, the device suddenly and without warning changed direction, causing the plaintiff to fall and injure his left knee and back. On May 15, 2003, the plaintiff filed suit against Willis-Knighton, listing several acts of negligence and specifically pleading the application of res ipsa loquitur. He asserted that the defendant knew or should have known that the treadmill was malfunctioning and failed to take the necessary steps to warn patrons.
Willis-Knighton filed an exception of prematurity, arguing that the plaintiff's allegations, if proven, fall within the scope of the Louisiana Medical Malpractice Act (MMA). According to Willis-Knighton, the allegations in the petition concern negligence of the hospital; it argues that allegations of negligence by a patient concerning physical therapy must be reviewed by a medical review panel (MRP) before suit is filed. Because no MRP was convened in this matter, Willis-Knighton contends that the petition is premature.
The exception was considered by the trial court on July 28, 2003. The court found that this matter concerned a malfunctioning treadmill and was not a medical malpractice case. Therefore, the exception of prematurity was denied. Willis-Knighton appealed, asserting that the trial court erred in finding that this is not a medical malpractice claim that must be submitted to a MRP panel prior to filing suit.

Legal Principles
La. C.C.P. art. 926 provides for the dilatory exception of prematurity. A suit is premature if it is brought before the right to enforce the claim has accrued. La. C.C.P. art. 423. Prematurity is determined by the facts existing at the time a suit is filed. Yokem v. Sisters of Charity of the Incarnate Word, 32,402 (La.App.2d Cir.6/16/99), 742 So.2d 906.
La. C.C.P. art. 930 provides that, on the trial of the dilatory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.
The exception of prematurity may be utilized in cases where the applicable law has provided a procedure for a claimant to seek administrative relief before resorting to judicial action. Generally, the person aggrieved in such a case must exhaust all administrative remedies before being entitled to judicial review. Yokem v. Sisters of Charity of the Incarnate Word, supra.
The MMA provides such a mechanism by requiring all medical malpractice claims against covered health care providers to be submitted to a MRP prior to filing suit in court. This administrative procedure affords the MRP an opportunity to render its expert opinion on the merits of the complaint. Yokem v. Sisters of Charity of the Incarnate Word, supra.
A judgment rejecting an exception of prematurity is interlocutory and unappealable in the absence of irreparable injury. However, a judgment requiring a health care provider to forgo the benefit of the MRP is considered appealable because MRP proceedings cannot be adequately replicated after reversal on appeal. The instant judgment is therefore appealable. Fincher v. State Department of Health and Hospitals, 29,640 (La.App.2d Cir.4/2/97), 691 So.2d 844.
The MMA, in La. R.S. 40:1299.41(A)(8), defines "malpractice" as follows:
A. As used in this Part:

*477 (8) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
"Health care" is defined under La. R.S. 40:1299.41(A)(9) as "any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement."

Discussion
At the hearing, the defendant showed that it was a qualified health care provider under the MMA. It argues that the rendition of physical therapy to the plaintiff was health care as defined in the MMA.
The plaintiff claims that he did not allege a tort based upon health care services rendered. Rather, he argues that his case was based solely on strict liability for a defective thing in the defendant's custody. He also urges that he did not allege that any act or omission by the health care provider caused the treadmill to be defective or contributed to its malfunction.
The plaintiff's petition lists several acts of negligence including, but not limited to:
1. Failure to use reasonable and ordinary care in order to protect patrons from a dangerous condition;
2. Failure to properly inspect the premises;
3. Failure to properly maintain the premises;
4. Failure to warn patrons of the presence of a dangerous condition; and
5. Any other acts of negligence later shown.
Romero also specifically pled the application of res ipsa loquitur. He further alleged that Willis-Knighton knew or should have known that the treadmill was malfunctioning and should have taken the necessary steps to alert patrons. In his prayer for relief, the plaintiff seeks judgment finding the defendant strictly liable for his damages, or in the alternative, apportioning fault between the plaintiff and the defendant under Louisiana's comparative negligence principles.
The plaintiff claims that this case is analogous to Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992). In Sewell, a patient, hospitalized following neck surgery, was injured when his hospital bed collapsed. He sued the hospital arguing only that the hospital was strictly liable for providing a hospital bed that was defective and unreasonably dangerous in normal use.
The supreme court reasoned as follows:
The Legislature originally defined malpractice principally as any unintentional tort based on health care or professional services which were rendered or should have been rendered by a health care provider to a patient, clearly indicating an intent to include liability in negligence for all acts and omissions by a health care provider during the furnishing of medical care or treatment or the confinement of a patient. However, the Legislature further defined malpractice to "also include[ ]" a health care provider's strict liability for some *478 injury-causing defective things, specifically enumerating defective blood, tissues, transplants, drugs, medicine and prosthetic devices used during the course of the patient's treatment. Clearly, the Legislature did not intend to include liability for all defective things in the custody of the provider which cause injury to a patient. By including liability for all negligent acts or omissions by a health care provider in providing care and services and for only those defective things which are specifically enumerated, the Legislature intended to exclude from the definition of malpractice a health care provider's strict liability for other defective things, unless negligence by the health care provider caused the thing to be defective or unreasonably dangerous. [Footnotes omitted; emphasis supplied.]
The supreme court in Sewell concluded that the cause of action was based solely on strict liability for a defective thing under the defendant's custody. A hospital bed was not one of the defective things specifically enumerated in the definition of malpractice for which the MMA limits a health care provider's strict liability. The supreme court noted that the plaintiff in Sewell did not allege that any act or omission by the health care provider caused the bed to be defective or contributed to its collapse, nor had the plaintiff alleged that the hospital knew or should have known of the defects. In a footnote that court stated:
Thus, a health care provider's liability may arguably be included under the Act when a patient is injured in a fall from the hospital bed because the provider's employee was negligent under the particular circumstances in failing to raise the sides, but the provider's liability may not be included under the Act when the patient is injured in a fall because the same bed collapsed from a metallurgical defect, unless the provider caused the defect or knew or should have known of the defect and neglected to repair it. [Emphasis supplied.]
However, we note that since the rendition of Sewell, the provisions regarding strict liability in the Louisiana Civil Code have been revised significantly.
La. C.C. art. 2317 provides:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
La. C.C. art. 2317.1, which became effective April 16, 1996, specifies that:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Under the present statutory scheme, a person may be held liable for damage caused by a thing in his custody only if he knew of the ruin, vice, or defect and of the thing which caused the damage, that damage could have been prevented by the exercise of reasonable care, and the owner failed to exercise such reasonable care. Because concepts of liability for damage caused by things in a person's custody have changed dramatically since the rendition of Sewell in 1992, we find that the case does not govern the issue presented here.
*479 The Louisiana Supreme Court has furnished guidance in determining whether a claim is covered by the MMA. The supreme court set forth the following factors in Coleman v. Deno, XXXX-XXXX (La.1/25/02), 813 So.2d 303:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and
(3) whether the pertinent act or omission involved assessment of the patient's condition,
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
(5) whether the injury would have occurred if the patient had not sought treatment, and
(6) whether the tort alleged was intentional.
When applying the factors enumerated in Coleman v. Deno, supra, to the allegations in the petition, this matter does not fall under the MMA. Willis-Knighton has failed to show that the injury involved was related to the plaintiff's medical treatment. Such information might have been furnished to the court under La. C.C.P. art. 930. Although the plaintiff makes general claims that the injury occurred while taking physical therapy, the record does not show whether the therapy was being taken under the direction of a doctor, whether therapy was monitored by a physical therapist with progress notes furnished to a doctor, or whether this accident occurred in an area specifically designated for physical therapy rather than in the general health club area available to all fitness club members.
Expert medical evidence would not be necessary to determine whether the appropriate standard of care was breached. The malfunction of the machine would not require medical expertise, although the evaluation of the resulting injury might.
We cannot determine from the record whether the pertinent act or omission involved assessment of the patient's condition. We have no information to show whether the plaintiff's injury occurred while he was being monitored by medical personnel.
The record does not show whether the incident occurred in the context of a physician-patient relationship or was within the scope of activities which a hospital is licensed to perform. The defendant failed to show whether the therapy was prescribed by a physician or was a medical service that the hospital was licensed to perform. The record is silent as to whether this injury occurred while the plaintiff was a patient in the hospital receiving physical therapy or while he was in the health club under general medical advice to exercise.
It appears that the injury would not have occurred if the plaintiff had not used the treadmill. However, as specified above, the defendant failed to show that the injury was related to medical treatment.
There are no allegations that the tort was intentional.
The defendant contends that under Renz v. Ochsner Foundation Hospital/Clinic, 420 So.2d 1008 (La.App. 5th Cir.1982), this matter falls under the MMA and requires the appointment of a MRP. In Renz, a plaintiff was injured as a result of a malfunction in a medical life support system following coronary bypass surgery. The fifth circuit found that use of a life support *480 system is part of professional services rendered and the claim fell under the MMA.
In Dominick v. Rehabilitation Hospital of New Orleans, 1997-2310 (La.App. 4th Cir.4/15/98), 714 So.2d 739, a plaintiff slipped and fell on a wet floor in the hospital kitchen. At the time of the accident, the plaintiff was receiving physical therapy and was walking with a small walker, with the aid of a physical therapist. The plaintiff filed suit alleging negligence on the part of the hospital. The hospital's exception of prematurity was granted, finding the injury occurred during the rendition of health care and was subject to malpractice procedure, even though the plaintiff alleged alternative theories of liability.
In Harris v. Sternberg, XXXX-XXXX, 2001-2170 (La.App. 4th Cir.5/22/02), 819 So.2d 1134, writ denied, XXXX-XXXX (La.9/30/02), 825 So.2d 1198, a plaintiff fell off the scales in a doctor's office and was injured. Applying the factors of Coleman v. Deno, supra, the fourth circuit found that the incident involved medical malpractice. This injury occurred during the rendition of medical services.[1]
In all the cases cited by Willis-Knighton, there was a showing that the injury sustained by a patient was related to medical treatment. Conversely, the plaintiff cites jurisprudence in which patients were injured under circumstances not involving the rendition of medical services.
In support of his argument that the MMA does not apply in this case, the plaintiff cites Stapler v. Alton Ochsner Medical Foundation, 525 So.2d 1182 (La. App. 5th Cir.1988), and Head v. Erath General Hospital, 458 So.2d 579 (La.App. 3d Cir.1984), writ denied, 462 So.2d 650 (La.1985). In Stapler and Head, hospital patients were injured in slip and fall accidents. In each case, the plaintiff slipped on a substance on the floor. The courts concluded that the accidents were not related to the rendition of medical services.
In the cases cited by both parties, the factor determining whether the case falls under the MMA is whether the plaintiff's injury was related to the rendition of medical services. In the present case, the defendant failed to show that the plaintiff's treadmill injury occurred during medical treatment. Without such a showing, the matter does not fall under the MMA and the trial court was correct in denying Willis-Knighton's exception of prematurity.

CONCLUSION
For the reasons set forth above, we affirm the trial court judgment denying Willis-Knighton's exception of prematurity. Costs are taxed to Willis-Knighton.
AFFIRMED.

APPLICATION FOR REHEARING
Before STEWART, GASKINS, CARAWAY, PEATROSS, and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] In Williamson v. Hospital Service District No. 1 of Jefferson, XXXX-XXXX (La.App. 5th Cir. 1/27/04), 866 So.2d 962, , the MMA was found to apply where a plaintiff was injured when a wheel fell off a wheelchair while the plaintiff was being discharged from the hospital. However, we note that this case has not yet been released for publication.